## W. K. MITCHELL & CO., Inc., v. AMERICAN CREDIT INDEMNITY CO. OF NEW YORK.

### No. 16912.

District Court, E. D. Pennsylvania.

Feb. 20, 1934.

Samuel K. White, of Peck & White, of Philadelphia, Pa., for plaintiff.

Benjamin O. Frick, of Evans, Bayard & Frick, of Philadelphia, Pa., for defendant.

KIRKPATRICK, District Judge.

This case was tried to the court and a jury, but at the conclusion of the testimony both sides submitted the general point without more, and it therefore becomes the duty of the court to dispose of it both on the law and the facts.

The defendant is engaged in the business of writing credit insurance. On August 15, 1930, it delivered its policy to the plaintiff, indemnifying it against loss, not exceeding $85,000, due to the insolvency of such of its customers as came within certain classifications. One of these was Fulton Iron Works Company with its principal place of business at St. Louis, Mo. The plaintiff, under a contract made on January 1, 1930, was delivering fabricated piping and equipment to the Fulton Company for an amount, fixed by a schedule of prices in the contract, which came to $120,136.61. But, and this is important to note, the price was not all to be paid by the Fulton Company. The contract—I so interpret it, though it is not entirely free from ambiguity—provided that the Fulton Company was to pay only 30 per cent. of the amount. For the balance the plaintiff was to look to a Mexican corporation referred to as the "Del Mante Corporation" without recourse to the Fulton Company. This was the concern for which the Fulton Company was doing a construction job in Mexico and for which the materials purchased were destined.

The Fulton Company went into the hands of receivers on November 22, 1930, and nine or ten months later was adjudicated a bankrupt. Of the 30 per cent. or $36,040.98 of the contract price which was due from the Fulton Company, the plaintiff received by cash and credits $16,428.21, leaving a balance of $19,612.52 which, admittedly, has never been paid. The policy provides that the plaintiff's net loss is subject to a deduction of 10 per cent. or $1,961.25 plus a further deduction of $6,000 called a "normal loss." After making these deductions, the balance left is $11,-

661.31, which is the amount for which the plaintiff has brought this suit.

I. The first question is whether the defendant is liable at all. It is conceded that the plaintiff failed to comply with a term of the policy which required it to file a sworn "Final Statement of Claim" within thirty days after the termination of the policy (August 15, 1931). The plaintiff did, as soon as it learned of the Fulton Company's difficulties, advise the defendant of the situation and of the nature and amount of its claim against the Fulton Company, and thereafter filed with the defendant a "Notification of Claim" also required by the policy which, as amended, was accepted by the defendant as full compliance with the policy in that respect. The notification of claim was accompanied by a detailed statement showing the plaintiff's account with the Fulton Company, giving all items of debit and credit with dates. In a former opinion, upon a motion for judgment for want of sufficient affidavit of defense, I held that the filing of the notification of claim and statement was not a compliance or attempt to comply with the "Final Statement" term of the policy, and that it was insufficient to relieve the plaintiff of the consequences of its default in the latter respect. The pleadings, which were all that I had before me, showed nothing whatever as to any further communication between the parties, and I had to proceed upon the assumption that there was none.

However, the trial developed a great deal more, and I find the following facts in addition to those brought upon the record by the pleadings:

(a) From November 17, 1930, until November 3, 1931, the plaintiff and defendant were in constant communication. Approximately forty letters and telegrams were interchanged by them during that period. Throughout this correspondence the parties were in perfect accord and dealt with entire frankness. The plaintiff's claim against the Fulton Company had been placed in the hands of the defendant for collection. The defendant's home office was in St. Louis, where the plant of the Fulton Company was located. The plaintiff furnished the defendant at all times with all the information which it had with regard to the claim and the progress being made, although the defendant at most stages knew more about it than the plaintiff, and many of the letters consist of requests by the plaintiff for information as to the state of affairs, which information the defendant was usually able to give and did give. At no time during this correspondence was the final statement of claim mentioned by either party until the defendant's letter of November 3, 1931, at which time it was nearly two months overdue. During all this period the defendant was working upon the collection of the plaintiff's claim against the Fulton Company with the end in view of reducing its losses on its policy to the plaintiff, and the plaintiff was co-operating with it in the fullest possible manner. The defendant's letters of September 21, 1931, October 12, 1931, and October 13, 1931, all after the default, are in exactly the same strain as those written before, and disclose no change in the defendant's attitude. The letter of October 13 advises the plaintiff to forward invoices or itemized statements and incloses a proof of debt and power of attorney.

(b) On two occasions (March 4, 1931 and January 19, 1932) the plaintiff's treasurer conferred with representatives of the defendant in charge of this matter. The first conference was with the manager of the defendant's service and collection department, and its general agent in Philadelphia. At that time the plaintiff was told "We have accepted your statement for nineteen thousand some odd dollars * * *." The other conference was with the defendant's Eastern adjuster and its assistant treasurer. This one took place after the alleged default, and one of the defendant's officers said to the plaintiff "I also feel that you have a satisfactory claim" and promised that he would use his personal influence to see that payment was made promptly.

(c) As has been stated, the first notice the plaintiff got that the defendant intended to raise the question of the failure to file the final statement of claim was in its letter of November 3, 1931. But that letter was equivocal to say the least. After calling the plaintiff's attention to the terms of the policy as to which the default was claimed and after stating and repeating that the writer "at this time" was unwilling to waive that provision, the letter goes on to say "I am willing to forward a blank Final Statement of Claim to you for your execution and return to this office * * *" and further "I am hopeful that you will be fair in every respect in the making of the adjustment, so that we will not be compelled to take advantage of the late filing

of the Final Statement of Claim." The implication is plain. The defendant intends the plaintiff to understand that its default will be waived if its demands are fair, and it is not suggested that the defendant reserve the right to be the sole judge of fairness. As a matter of fact, the plaintiff's demands were perfectly fair and no more than it was legally entitled to have from the defendant.

(d) It is true that a nonwaiver agreement was executed by both the plaintiff and the defendant but that was after the defendant's letter of November 3 and not in conflict with its terms.

■ Leaving out of the question waiver and estoppel, either one of which is supported by the evidence, I am satisfied that the situation of the parties, the defendant's superior knowledge of the entire matter, the full interchange of information, the cooperation of the plaintiff and the general relations of the two companies throughout made compliance with the final statement of claim clause unnecessary and immaterial. I realize that on this point I ruled differently upon the motion for judgment on the pleadings, though the facts as then presented did not really require that I should go so far. I followed National Surety Company v. Long (C. C. A.) 125 F. 887. Since then, however, I have carefully considered the opinion of the Circuit Court of Appeals of this Circuit in New Amsterdam Casualty Company v. Basie Building and Loan Association, 60 F.(2d) 950, and those of the Supreme Court of Pennsylvania in Fedas v. Insurance Company of Pennsylvania, 300 Pa. 555, 151 A. 285, Cara v. Newark Insurance Company, 312 Pa. 489, 167 A. 356, and Pennsylvania Fire Insurance Company v. Dougherty, 102 Pa. 568. I am now satisfied that the law for this Circuit is that, entirely apart from any question of waiver or estoppel, where an insurance company under circumstances such as appear in this case has received all the information that the insured can possibly give it, compliance with the requirement of a final statement of claim is unnecessary, and the term may be read out of the contract. I do not say that I am fully in accord with this view, but I am clearly bound by the decisions.

■ II. The other question in the case is as to the amount which the plaintiff is entitled to recover. The defendant stands upon a clause in the policy which calls for a prorating of the loss in case the indebtedness of the defaulting debtor is not covered in full by the policy. It is clear, however, that in this case, while the total amount of the order was upwards of $120,000, the debtor, the Fulton Company, was only liable for $36,040.98. Although all the pipe and equipment was delivered on the order of the Fulton Company, nevertheless the Del Mante Company, and no one else, was liable for the balance. The amount of the policy was $85,000. Consequently, the entire indebtedness of the Fulton Company was covered by the policy, and the pro rata clause does not apply.

The general point submitted by the plaintiff is affirmed.

The general point submitted by the defendant is denied.

Exceptions are allowed to the defendant.

The court finds a verdict in favor of the plaintiff for $11,651.31, with interest from May 1, 1931.

Judgment may be entered thereon.

### Sur Reargument.

1. Upon the general question of liability, I adhere to my ruling that the defendant is liable.

2. Upon the question as to the amount which the plaintiff is entitled to recover, I also adhere to the conclusion already reached. Upon this point, some discussion may be not out of place.

In the opinion heretofore filed I took the view that, under its contract with the Fulton Company, the plaintiff never had any claim upon that company for anything beyond the two cash payments of 15 per cent. each, which were to be made direct by Fulton to the plaintiff, and which aggregated $36,040.98. As to the balance, I concluded that the parties had carefully avoided placing any obligation upon the Fulton Company, the plaintiff agreeing to look for payment only to the Del Mante drafts, and consequently such balance could not be included in the indebtedness of the Fulton Company at the time of its insolvency. The amount covered by the policy was $60,000. (I stated it incorrectly as $85,000, but it makes no difference.) Therefore, the entire indebtedness being covered, I held that the pro rata clause did not apply.

The defendant has presented a strong argument for the theory that the contract between the plaintiff and the Fulton Company really made the latter liable for the full amount, but it is unnecessary to deal

with it at length because, whatever the original extent of the liability, I now think it clear that it had, on November 22, 1930, the date of insolvency, been reduced by payments below the limit of the policy.

To test the correctness of this, let it be assumed that, upon delivery of the material to it, the Fulton Company became "indebted" to the plaintiff for the full price of $120,136.61. (Under the defendant's theory, this indebtedness would be primary to the extent of 30 per cent. and secondary for the remaining 70 per cent. But that does not matter, for we will assume that the words of the policy, "indebtedness of the debtor to the indemnified," covered the whole price whatever the nature of the liability.)

Whatever the extent of the original indebtedness, no one will contend that on the date of insolvency it still included amounts which the plaintiff had actually received by way of payment. Payment is the discharge of an obligation, and consequently an ending of indebtedness. The indebtedness, therefore, under any view of the case, could not be more than the amount of the unpaid balance.

Now how much had been paid to the plaintiff on November 22, 1930?

In the first place, the plaintiff had received some $16,000 or more in cash, leaving a balance of $19,677.84 upon the first 30 per cent. of the price which was to be paid direct in cash. Certainly, upon its obligation to pay cash, the Fulton Company was not "indebted" for more than this balance.

Then, the plaintiff had also, prior to the Fulton Company's insolvency, received and accepted a registered participation certificate for $60,059.62 representing the 15 per cent. payment due January 15, 1931. Was this accepted in payment? If it was, the Fulton Company was no longer indebted for this amount, and the pro rata clause drops out, because the balance left is much less than $60,000.

The contract plainly provides "Seller agrees in such cases to accept such Certificate of Participation as payment for the 50% of the purchase price under this contract." Nothing could be more definite than this provision, but its intendment is fortified by the earlier provision that "It is agreed that as to the third installment payable hereunder, of 50%, the Seller hereunder shall look only to the obligation of the Compania Azucarera Del Mante to Purchaser to pay 40% of the purchase price on January 15, 1931, without recourse against Purchaser * * *"

It is, of course, perfectly competent for parties to agree to accept something other than cash as full payment. Undoubtedly they have so agreed in this case, and the receipt of the participation certificate operated to discharge, pro tanto, any obligation which the Fulton Company might have had to Mitchell under any possible construction of the contract, although, as I have said, I still do not think there ever was such obligation.

Under any view of the Fulton Company's obligation under its contract with the plaintiff, its indebtedness was less than $60,000 at the date of its insolvency, and the pro rata provision does not apply.

Judgment may be entered as directed, in the amount of $11,651.31.