## AMERICAN CREDIT INDEMNITY CO. OF NEW YORK v. W. K. MITCHELL & CO., Inc.

### No. 5486.

Circuit Court of Appeals, Third Circuit.

April 17, 1935.

Rehearing Denied June 14, 1935.

Benjamin O. Frick, of Philadelphia, Pa. (Evans, Bayard & Frick, of Philadelphia, Pa., of counsel), for appellant.

Samuel Knox White and Peck, White & Forster, all of Philadelphia, Pa., for appellee.

Before WOOLLEY, DAVIS, and THOMPSON, Circuit Judges.

DAVIS, Circuit Judge.

This was a suit by W. K. Mitchell & Co., hereinafter called plaintiff, to recover $11,651.32, which it claims under its policy of credit indemnity insurance issued to it by the defendant on August 15, 1930.

The policy insured the plaintiff against loss, not exceeding $85,000, resulting from the insolvency of certain of its classified customers. The Fulton Iron Works Company of St. Louis, Mo., hereinafter called the Fulton Company, was one of these customers. Under its contract of January 1, 1930, with the Fulton Company, plaintiff delivered to it fabricated piping and equip-

ment to the amount, fixed by the schedule of prices, of $120,136.61. Under the contract, the Fulton Company was to pay plaintiff 30 per cent. of this amount and the balance was to be paid by a Mexican Company, called the "Del Monte Corporation," for which the Fulton Company was doing certain construction work in Mexico. The material furnished to the Fulton Company by the plaintiff was used in this work.

The Fulton Company became financially embarrassed and went into the hands of receivers on November 22, 1930. Nine months later, on September 4, 1931, it filed a voluntary petition in bankruptcy, on which it was shortly thereafter adjudicated a bankrupt.

Two questions arise out of the facts of this case: 1. Whether or not the defendant, Indemnity Company, is liable for anything; and, 2, if it is liable, what is the amount of its liability?

The defendant says that, under condition No. 6 of the policy, it is not liable at all under its guarantees. That condition is as follows: "6. Final statement of Claim— If any claim for excess loss is made under this Policy, a Final Statement of Claim, duly sworn to, shall be made by the Indemnified upon blank forms which will be furnished by the Company upon application, but such Final Statement of Claim must be received by the Company at its Executive Office in Saint Louis, Missouri, within thirty (30) days after the termination of this Policy. No claim for loss shall be made or allowed under this Policy unless set forth in such Final Statement of Claim, nor shall any claim that has been collected in full be included therein."

The policy was issued August 15, 1930, and the defendant was liable thereunder for "the term beginning the 16th day of July 1930 and ending the 15th day of July 1931." It was necessary, the defendant says, for the plaintiff to make its final statement of claim for the loss it had sustained within thirty days after the termination of the policy, that is, on or before August 15, 1931. The final statement of claim was not presented or sent to the defendant until November 10, 1931, which was more than thirty days from the expiration of the policy. Clearly, the defendant was not liable under the policy because of the failure of plaintiff to file its final statement of claim within the time required by the policy unless the defendant waived that requirement.

Whether or not it did is a question of fact to be inferred from the evidence.

In the opinion below, 11 F. Supp. 394, the learned trial judge said: "I am now satisfied that the law for this Circuit is that, entirely apart from any question of waiver or estoppel, where an insurance company under circumstances such as appear in this case has received all the information that the insured can possibly give it, compliance with the requirement of a final statement of claim is unnecessary and the term may be read out of the contract. I do not say that I am fully in accord with this view, but I am clearly bound by the decisions."

This conclusion was based upon the case of New Amsterdam Casualty Company v. Basic Building and Loan Association (C. C. A.) 60 F.(2d) 950, 952. In that case, we said: "There was no express waiver of the necessity of filing a claim, within time, showing the items and dates of loss, but waiver may be inferred from the acts of the parties, and under the circumstances of this case, failure to file formal proof of loss does not constitute a defense."

We did not there or anywhere else in that case intend to read any provision out of the contract, and if the learned District Judge so construed our language, we did not make sufficiently clear what we intended to say, so that our language could not be misconstrued. What we intended to say, and all that we thought we had said, was that "waiver may be inferred from the acts of the parties," and this we now affirm. Higgins v. Fidelity-Phœnix Insurance Company, 107 N. J. Law, 175, 151 A. 869; Simons v. Safety Mutual Fire Insurance Company, 277 Pa. 200, 120 A. 822; Fedas v. Insurance Company of Pennsylvania, 300 Pa. 155, 151 A. 285. In the New Amsterdam Case, we held, with the trial judge, that the evidence justified the inference that the defendant had waived the requirement in the contract that the claim be submitted in writing to the home office within three months after the discovery of the fraud. In the case at bar, we agree with the trial judge that under the evidence it was unnecessary for the plaintiff to file its final statement of claim with the defendant "at its Executive Office in Saint Louis, Missouri, within thirty (30) days after the termination of this Policy." In so doing, however, we do not intend to read that provision out of the contract of insur-

ance. It is out, because from the facts and circumstances of the case the law declares that the company waived it.

 Courts are "not disposed to scan very strictly the evidence which tends to rebut a technical forfeiture of the right to payment" in a policy of insurance, or "to oppose the barest technicality as a bar to the plaintiff's right to recover a strictly honest claim." Pennsylvania Fire Insurance Company v. Dougherty, 102 Pa. 568, 571, 572; Lycoming County Mutual Insurance Company v. Schollenberger, 44 Pa. 259; Cara v. Newark Fire Insurance Company, 312 Pa. 489, 167 A. 356. Whether or not the insurer by its conduct has waived the filing of the proof of loss or the final statement of claim in any case is a question of fact to be determined by the jury, or, as in this case, by the judge sitting as a jury. Bonnert v. Pennsylvania Insurance Co., 129 Pa. 558, 18 A. 552, 15 Am. St. Rep. 739; Evans v. Metropolitan Life Insurance Co., 294 Pa. 406, 144 A. 294; Fedas v. Insurance Company of the State of Pennsylvania, 300 Pa. 555, 151 A. 285; Philadelphia Automobile Finance Company v. Agricultural Insurance Co., 102 Pa. Super. 1, 156 A. 625. The learned trial judge found on sufficient evidence that the co-operation of the plaintiff with the defendant and "the general relations of the two companies throughout made compliance with the final statement of claim clause unnecessary and immaterial." During all the negotiations, in which there was the fullest co-operation between plaintiff and defendant, there was never a hint made by the defendant that it was not liable for the loss until November 3, 1931, nearly four months after the termination of the policy, when the default, if any, had been made, and when the defendant felt that it might be free from liability under the policy. A fair interpretation of the evidence shows rather conclusively that the defendant, which was in possession of all the facts upon which a final statement could be based, from the beginning recognized its liability. Plaintiff and defendant worked hand in hand in order that the loss might be prevented or minimized, and, under the decisions in Pennsylvania, this is evidence from which a waiver may be inferred. Fedas v. Insurance Company of the State of Pennsylvania, 300 Pa. 555, 151 A. 285.

The learned trial judge correctly summarized the evidence as follows:

"From November 17, 1930, until November 3, 1931, the plaintiff and defendant were in constant communication. Approximately forty letters and telegrams were interchanged by them during that period. Throughout this correspondence the parties were in perfect accord and dealt with entire frankness. The plaintiff's claim against the Fulton Company had been placed in the hands of the defendant for collection. The defendant's home office was in St. Louis, where the plant of the Fulton Company was located. The plaintiff furnished the defendant at all times with all the information which it had with regard to the claim and the progress being made, although the defendant at most stages knew more about it than the plaintiff, and many of the letters consist of requests by the plaintiff for information as to the state of affairs, which information the defendant was usually able to give and did give. At no time during this correspondence was the final statement of claim mentioned by either party until the defendant's letter of November 3, 1931, at which time it was nearly two months overdue. During all this period the defendant was working upon the collection of the plaintiff's claim against the Fulton Company with the end in view of reducing its losses on its policy to the plaintiff, and the plaintiff was co-operating with it in the fullest possible manner. The defendant's letters of September 21, 1931, October 12, 1931, and October 13, 1931, all after the default, are in exactly the same strain as those written before, and disclose no change in the defendant's attitude. The letter of October 13 advises the plaintiff to forward invoices or itemized statements and incloses a proof of debt and power of attorney. * * *

"Leaving out of the question waiver and estoppel, either one of which is supported by the evidence, I am satisfied that the situation of the parties, the defendant's superior knowledge of the entire matter, the full interchange of information, the co-operation of the plaintiff and the general relations of the two companies throughout made compliance with the final statement of claim clause unnecessary and immaterial."

The evidence abundantly supports these conclusions.

 The defendant says that if it is mistaken in its position that it is not liable in any amount, the most that plaintiff can

claim is $4,235.40. But the indebtedness of the Fulton Company against the insolvency of which the defendant had insured plaintiff was $120,136.61. Under the terms of the contract, the plaintiff was to look to the Fulton Company for only 30 per cent. of this, or $36,040.98. The Fulton Company paid $16,428.41 of this amount, leaving only $19,612.57 unpaid at the time of the bankruptcy. This amount, under the terms of the policy, was subject to two further deductions, 10 per cent. as coinsurance, or $1,961.25, and a "normal loss" of $6,000 from the remainder. Both of these aggregate $7,961.25, which, subtracted from the $19,612.57, leaves a balance of $11,651.32, with interest from October 15, 1931, for which judgment was entered. This appears to be the correct amount under the evidence in this case, and the judgment of the District Court therefor is affirmed.