## DUBOIS NAT. BANK OF DUBOIS, PA., v. HARTFORD ACCIDENT & INDEMNITY CO.

Civ. A. No. 3192.

District Court, W. D. Pennsylvania.
March 15, 1946.

John J. Pentz and Pentz & Silberblatt, all of Clearfield, Pa., for plaintiff.

Alter, Wright & Barron and Gifford K. Wright, all of Pittsburgh, Pa., for defendant.

GIBSON, District Judge.

The jury returned a verdict in the amount of $21,201.50 in favor of plaintiff, and defendant has moved for judgment in its favor notwithstanding the verdict.

On July 1, 1940 defendant issued two bonds to plaintiff, one called a "Primary Bankers Blanket Bond", in amount of $25,000, the other designated as "Excess Bond, Form No. 2". At this time the court is concerned only with the bond first named, as the obligation of defendant, by the verdict of the jury, is under it. By it the defendant obligated itself to protect the plaintiff for "Any loss through any dishonest, fraudulent or criminal act of any of the employees, including loss of property through any such act of any of the employees, whether any such act may be committed and whether committed directly or by collusion with others." The second bond differed from the first bond only in detail, but protected the plaintiff substantially as did the first bond in respect to the acts of the employees.

Prior to 1942 the plaintiff was doing business with a company known as Producers Economy Coal Company, of which one C. E. Lovejoy was in charge. In January of 1942, the Coal Company had borrowed, on notes purporting to be secured by assigned accounts, to over $39,000, practically to the full limit of $40,000 the bank was permitted to loan it. Still needing more money, the Coal Company obtained it from the president of the bank, W. G. Brown, who caused its checks to

be honored and carried by the bank as cash items. On July 30, 1942, when a show-down with the bank examiner occurred, the cash items amounted to $27,192.-35. At that time the note indebtedness was $39.040.43. The cashier and two assistant cashiers had knowledge of these cash items, but the members of the Board, other than Brown, denied that they had known anything about them.

Prior to this meeting on July 30, 1942, the president of the bank had secured a bill of sale of the assets of the Coal Company, which he held for the use of the bank, and the Board of Directors, on August 7, 1942, determined to take over the Coal Company, sell part of its assets, and continue the business in the hope that the bank might be saved from the apparent loss. The Bank's officers operated the coal company until May 5, 1944, when the total loss to the Bank was determined to be $43,-575.67. This amount was made up of cash items to the sum of $21,201.50, and $22,-374.17, loss on the notes. The Bank, by verdict of the jury, was not allowed to recover for the note loss.

Counsel for the defendant, in support of his motion for judgment, has assigned four reasons: (1) The action was prematurely brought; (2) plaintiff failed to file proof of loss within ninety days from the date of discovery thereof, as required by the insurance policy; (3) the evidence failed to establish that plaintiff relied on any waiver of the time of filing proof of loss; and (4) that plaintiff had not properly apportioned the moneys received for credit to the coal company on cash items entered after July 20, 1942.

The reasons assigned all relate to the alleged non-compliance of plaintiff with the terms of the bond. There can be no denial of the fact that the loss to the bank on the cash items was due to unlawful acts of W. G. Brown, president of the bank.

After the defendant had been notified informally of the loss to the Bank, an agent of defendant visited the Bank and was then fully notified of the facts as they were then known to exist. This visit occurred on October 6, 1942, and was prior to the ninety day period in which plaintiff was required by the bond to file proof of loss. The agent was informed as to the extent of the existing shortage and that the Bank had taken over and was liquidating the assets of the debtor coal company in the belief that the shortage would be ultimately wiped out. According to the testimony of plaintiff the defendant's agent agreed that the Bank should proceed with the liquidation, and that it need not file detailed proof of loss until the amount of such loss was finally determined. By this testimony, which the jury accepted, the defendant waived formal proof of debt until May 5, 1944.

█ True, this date was subsequent to the date when suit was filed, which was within the fifteen month period required by the bond, but the waiver as to formal proof of claim, and the confidential relations between the parties, as well as the failure of defendant to plead the alleged prematurity of the action as required by Rule 8(c) and Rule 12(h), Federal Rules of Civil Procedure 28 U.S.C.A. following section 723c, take 'the force from this objection to the pleading and make it appear merely technical. See New Amsterdam Casualty Co. v. Basic Building & Loan Association, 3 Cir., 60 F.2d 950; American Credit Indemnity Co. v. W. K. Mitchell & Co., 3 Cir., 78 F.2d 276.

█ The second reason for defendant's motion, failure to file proof of loss within ninety days after discovery of loss, is covered by the testimony of plaintiff as to the waiver which the court is bound to accept.

█ The third reason for defendant's motion is the alleged failure of plaintiff to rely upon the waiver of proof of claim. As evidence of this failure the defendant points to the failure of plaintiff to assert the waiver for two years and its assertion for the first time a few weeks prior to the trial date. Nevertheless it was admitted as part of the proof of plaintiff pursuant to the amendment of the claim and was in issue on the trial.

█ · The fourth reason advanced by defendant was the application of the funds derived from the liquidation of the Coal Company to overdrafts created between July 30 and August 14, 1942. It was alleged that the amounts were wrongfully deposited against the overdrafts of the Coal Company and not to the notes apparently secured by assignment of accounts. By the testimony of the plaintiff this action was taken with the knowledge and consent of defendant's agent, with the belief of all parties that the Bank would be kept from loss and the defendant from liability.

The plaintiff had the right to apply the fund to the unsecured claims. Arbuckles & Co. v. Chadwick, 146 Pa. 393, 23 A. 346.

The motion of defendant for judgment will be denied.

This case was originally tried before Judge Schoonmaker prior to his death.