## Nanty-Glo Borough v. American Surety Company, Appellant.

Argued October 1, 1934. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Philip N. Shettig,* with him *George W. Griffith,* for appellant.

*Clarence E. Davis,* for appellee.

OPINION BY MR. JUSTICE DREW, November 26, 1934:

This action was brought by the Borough of Nanty-Glo, Cambria County, against American Surety Company of New York, surety on the official bond of Benjamin A. Estep, tax collector for the borough for 1922, to recover compensation for losses alleged to have been caused by Estep's wrongful abstraction and wilful misapplication of moneys collected by him upon his duplicate for that year. Estep was later joined as a defendant. The jury returned a verdict against both defendants, and from the judgment entered thereon the surety appealed, assigning.as error the refusal of its motions for binding instructions and for judgment n. o. v.

The surety's only contention is that plaintiff failed to comply with the conditions of the bond with regard to notice of loss, filing of claim, and institution of suit.*

---

* These conditions, as set forth in the bond, are as follows:

"Provided, However:

"1. That loss be discovered during the continuance of this suretyship or within the fifteen months immediately following the termination thereof, and that notice of such loss be delivered to the Surety

Plaintiff contends, as it contended below, that the evidence is sufficient to support a finding that the surety was estopped to insist upon strict performance of these conditions. A statement of the facts of the case will, we think, make it apparent that this position is correct and must be sustained.

From the testimony it appears that the first intimation of a possible shortage in Estep's accounts came to the borough council on July 6, 1923, when the report of the borough auditors, showing that he had collected $4,743.09 which he had failed to turn over to the borough treasurer, was laid before it. On July 10 the borough secretary sent to the surety, at its office in Pittsburgh, a copy of the audit, with a letter calling attention to this item. On August 30 counsel for the borough again wrote the surety at its Pittsburgh office, calling attention to the item and asking an immediate reply as to what the borough might expect. The surety, on September 13, replied as follows: "We realize that this matter should be given immediate attention. It is our intention to have a representative call upon Mr. Estep, the first part of next week, to ascertain from him just what he intends to do to meet his obligation with the Borough of Nanty-Glo. We respectfully beg your indulgence until such time as our representative has had an opportunity to interview Mr. Estep." On November 16, the attorney for the borough informed the surety that suit would be brought at once unless a satisfactory

at its home office in the City of New York within ten days after such discovery.

"2. That claim, if any, be submitted by the Obligee in writing, showing the items and the dates of the losses, and be delivered to the Surety at its home office within three months after such discovery, and that the Surety shall have two months after claim has been presented in which to verify and to make payment. In the meantime no suit, action or proceeding shall be brought against the Surety by the Obligee, nor after the expiration of twelve months after the delivery of such statement of claim."

adjustment was received. In reply to this letter J. S. Priest, who was employed as an inspector by the surety, sent claim blanks to the attorney. On November 28, the attorney acknowledged receipt of the blanks, stating that he had forwarded them to the borough secretary, but adding, "We cannot even now say that Estep has appropriated the money to his own use. He may have reasons quite good for failing to make his final settlement." On April 16, 1924, counsel for the borough wrote the surety at its home office, asking whether its investigation had been completed. To this the surety replied, on May 12, "We find we have referred your claim to Mr. Priest, our Inspector at our Pittsburgh, Pa., Branch Office, for investigation. We have only had a partial report from him. I am, however, sending him copy of your letter, requesting him to furnish us with the complete report as soon as possible, at which time we will communicate further with you." On August 1 borough counsel wrote Mr. Priest that unless payment of the claim were made within five days, suit would be instituted. On the following day Mr. Priest replied: "I propose to visit Nanty-Glo day after tomorrow...... for the checking of this account with Estep. After investigation is completed I shall make prompt report of my findings to the officials of this company. In the meantime, we ask your indulgence." On August 23, 1924, the present action was begun.

It is well settled that conditions such as those here involved are valid and enforceable: Gentile v. Am. State Bank & Trust Co., 315 Pa. 123. But, as we said in Arlotte v. National Liberty Ins. Co., 312 Pa. 442, quoting from Williston, Contracts, section 677, "It is a principle of fundamental justice that if a promisor is himself the cause of the failure of performance either of an obligation due him or of a condition upon which his own liability depends, he cannot take advantage of the failure." We have many times held that an insurer who has misled the insured as to the necessity for perform-

ing a condition in the policy cannot thereafter take advantage of its nonperformance: Whitmore v. Ins. Co., 148 Pa. 405; Moyer v. Sun Ins. Office, 176 Pa. 579; Jenkins v. Ins. Co., 282 Pa. 380; Fedas v. Ins. Co., 300 Pa. 555; Gough v. Halperin, 306 Pa. 230; Arlotte v. Ins. Co., supra.

The surety concedes, and necessarily so, that the facts disclosed by the borough audit showed merely a shortage in the tax collector's accounts, without any indication as to whether this shortage was due to a cause which would make the surety liable on its bond. Since there was no knowledge on the part of plaintiff as to whether a loss had occurred, within the terms of the bond, there was no immediate necessity for giving notice of loss, and the notice then given of the facts disclosed by the audit was not such a notice of loss as was contemplated by the bond. However, the surety thereupon undertook to make a complete and independent examination into Estep's accounts, for the purpose of determining whether a loss had occurred, within the meaning of the bond. This investigation, or purported investigation, continued for more than a year, during which time the surety, when asked to settle the claim, twice requested indulgence from the plaintiff. At no time did the surety request any further notice of loss or any proof of claim; its conduct negatived any intention to require them. True, in November, 1923, claim blanks were sent to plaintiff's attorney, but plaintiff had already given to the surety, as the latter knew, all the information it then had, and the surety was then and for months had been conducting an investigation into the matter. In this situation, plaintiff was dependent upon the surety, rather than the surety upon plaintiff, for information. Furthermore, the surety's subsequent actions showed that under the circumstances it did not expect formal proof of claim. Its own investigations were designed to bring to its knowledge, in a more definite and reliable manner than plaintiff could do, the

facts which would be embodied in a proof of claim. There can be no doubt that the conduct of the surety was calculated to lead plaintiff to believe that it would not require formal notice of loss or proof of claim, nor can there be any doubt that plaintiff's failure to perform the conditions of the bond with respect thereto was due to that conduct. This being true, the surety had no right to defend on the ground that these conditions had not been complied with. So, also, the failure to bring suit within the time required by the bond (if it can be said that there was such a failure, in view of the fact that the filing of a statement of claim, the event upon which the one-year limitation would begin to run, was dispensed with) was due directly to the request of the surety for indulgence when threatened with suit, and to the surety's representations that it was investigating the claim. Since the surety was itself the cause of nonperformance of this condition, it could not prevent a recovery on the ground of such nonperformance: Arlotte v. Ins. Co., supra.

Judgment affirmed.