## Cherniak v. Prudential Insurance Company of America

*Horenstein & Harvey*, for plaintiff.

*F. J. Shoyer*, for defendant.

PARRY, J., April 24, 1940.—This was an action of assumpsit on a policy of life insurance issued by the defendant in the amount of $10,000 providing for a monthly income to the insured in the event he should become "totally and permanently disabled, either physically or mentally, from any cause whatsoever, to such an extent that he is rendered wholly, continuously and permanently unable to engage in any occupation or perform any work for any kind of compensation or financial value during the

remainder of his lifetime and if such disability shall occur at any time after the payment of the first premium on this policy, while this policy is in full force and effect, * * * the Company upon receipt of due proof of such disability will * * * waive the payment of any premium or premiums the due date of which * * * shall occur after receipt by the Company of said proof of such disability."

The insured was a practicing physician who brought this action through his legally appointed guardian to recover the disability benefits. It was shown that the last premium paid on the policy was that due on January 26, 1936, the premium following, due April 26, 1936 not being paid when due nor within the thirty day grace period thereafter, at which time the defendant declared the policy lapsed for nonpayment of premiums.

Upon the merits of the case two issues are raised. (1) Was the insured on May 26, 1936 totally and permanently disabled to such an extent that he was unable to engage in any occupation or perform any work for any kind of compensation or financial value and (2) was he excused from giving notice of his disability by reason of his incapacity? It is undisputed that from September 1935 until March, 1936 he served in the Army Medical Corps as a First Lieutenant and Medical Officer at a CCC camp in Virginia. That from March until May, 1936 he had an office and practiced medicine in Washington, D. C., after which he came to Philadelphia and opened an office at 1516 Girard Avenue where he practiced from July, 1936 until October 1, 1936, when he moved across the street and rented an apartment in order to get living accommodations as well as an office. He had alterations made in the apartment to suit his purpose for which he paid and at these various places he received professional fees. Since February 4, 1937 the insured has been in custody suffering from dementia præcox paranoid.

On behalf of the plaintiff a mass of evidence was produced tending to show that the insured had been mentally

deranged for a number of years and this was not seriously disputed. Upon this the plaintiff contends that it necessarily follows that since a medical expert has testified that the insured was not in his opinion fit to treat patients and perform operations that he was totally incapacitated within the meaning of the policy and that due to his mental condition he was incapable at the time the policy lapsed of giving any notice to the defendant company and is therefore excused from the payment of the premiums and entitled to benefits under the policy.

As to the question whether the insured is legally excused from furnishing such proof if prevented by insanity, there is a marked difference of judicial opinion: Equitable Life Assurance Society vs McCausland, 331 Pa. 107. But the same case also holds that the furnishing of proof of disability is a condition precedent to the waiver of all premiums falling due after the receipt of such proof. It was therefore incumbent upon the plaintiff at least to show that while the policy was still in force, the plaintiff became so incapacitated as to be incapable of giving any notice. There is no such evidence. The insured's hallucinations and eccentric conduct perhaps resulted in the loss of a remunerative practice and rendered it injudicious in the opinion of some of the witnesses for him to continue. But it nowhere appears that he had the slightest difficulty in attending to his affairs. A month before the last premium was due he went to the office of the Insurance Company and borrowed $150 on his policy, which he was said to have used in renting an office and thereafter he had sufficient mental capacity to rent and equip, and practice at, two other offices. It may well be doubted whether the jury should have been permitted to determine, in view of these undisputed facts, whether he was incapable of giving the notice, but even if this be so, once it is conceded that he did in fact engage in his usual occupation and collect fees for his service, we do not think that an opinion that he was unable to do so has any

probative value. We therefore agree with the trial Judge that the plaintiff failed to make out a case.

We are urged further to set aside the verdict and grant a new trial on the ground that the plaintiff's counsel was within his right in asking to suffer a voluntary nonsuit at the conclusion of the case.

At the common law it was necessary for the plaintiff or his counsel to be in Court before a verdict could be given: Crumley v Lutz, 180 Pa. 476. And this was for the reason that if the plaintiff failed in his suit he should be in Court to answer to the amercement, to which by the old law he was liable, as a punishment for his false claim. But if the plaintiff did not appear in Court he was non-suited and in order to enable him to avoid amercement in case he was unsuccessful, he was given the right to suffer a voluntary nonsuit. While the rule has been continued in modern practice it is hardly necessary to observe that the reason for it long since ceased to exist.

This right has in Pennsylvania been limited by statute. Section 2 of the Act of March 28, 1814, 6 Smith's Laws 208, provided that:—
"whenever on the trial of any cause the jury shall be ready to give in their verdict, the plaintiff shall not be called nor shall he then be permitted to suffer a nonsuit."

While the Act of April 16, 1903, P. L. 216, provided that:—
"the plaintiff shall not be permitted to suffer a voluntary nonsuit after the jury have agreed upon their verdict, sealed the same, and separated, unless such nonsuit shall be specially allowed by the court for cause shown."

At the conclusion of the trial, which lasted three days, counsel for both the plaintiff and defendant submitted points for binding instructions and were heard in argument thereon. At the conclusion of this argument the trial judge announced his intention of directing a verdict for the defendant.

"The Court: I don't think you have any authority for that. I shall have to direct a verdict.

"Mr. Harvey: I will ask for a voluntary nonsuit.

"The Court: It is too late. Jurors, I direct you to bring in a verdict for the defendant.

The trial judge thereupon stated his reasons for directing a verdict for the defendant, which was then returned by the jury and recorded. The question we have to determine is whether the jury were ready to give in their verdict at the time the plaintiff's counsel announced his intention of asking for a nonsuit.

We are perfectly aware of the cases relied on by the plaintiff and agree there can be no doubt that in Pennsylvania a plaintiff has the right to suffer a voluntary nonsuit at any time before the jury are ready to give in their verdict. Act of March 28, 1814, 6 Smith's Laws 208; Axelrod vs Howell, 328 Pa. 297. But in none of these cases did the situation before us arise and in none of them was it considered. The point does not appear to have been ruled by our Appellate Court but it has been frequently dealt with in other jurisdictions.

In Ohio, Iowa, Nebraska, Oklahoma and Kansas the question arose under a provision of a code or statute which in each State reads as follows:—

"An action may be dismissed without prejudice to a future action (1). By the plaintiff before the final submission of the case to the jury, or to the Court, where the trial is by the Court."

In Turner vs Pope et al, 79 Ohio 153, the plaintiff rested at the conclusion of his case, and immediately the defendants each moved the Court to direct a verdict in its favor. The Court said that no negligence had been shown against either defendant and "the motion as to both will be sustained." Plaintiff's counsel asked time for consultation and at its expiration said:—"I am asking that this action may be dismissed without prejudice." Some discussion followed, after which the Court recessed until the next morning. On convening counsel again took up the subject and concluded by saying "The plaintiff dismisses this case without prejudice". The Court refused to enter

the dismissal and directed the jury to return a verdict for the defendant.

Upon appeal Price C. J. said:—

"The court had reached and announced its conclusion, and while the words are, 'will be sustained,' we think they mean that the decision was then made. . . . The cause had been submitted to the court and its judgment invoked. If the court had the power to exercise discretion on the subject, we cannot find that the discretion was abused in refusing to enter the dismissal at so late a stage in the proceedings. . . .

"To recognize in our practice the claim that is made by the plaintiff in error, would give a plaintiff the right, when he fails to make out a case, and it is so decided, to thwart the contest on his own evidence, dismiss without prejudice, and again bring the defendant into some court to answer a similar demand, with all the attendant costs; and if it can be done once, it may be done a second or third time, thus prolonging the expensive and annoying litigation. This practice should not be encouraged and we therefore think it our duty to affirm the judgment of the circuit court."

In Harris vs Beam, 46 Ia. 118, after the evidence was introduced and argument concluded the Court, in substance, instructed the jury that plaintiff had introduced no proof that he was the owner of the claim sued on and the verdict must be for the defendant. Thereupon the plaintiff offered to dismiss his action. Defendant objected, the objection was overruled and the case dismissed. In distinguishing the case of Hays v. Turner, 23 Ia. 214, the Chief Justice said:

"The Court had found the facts and had announced the conclusions of law and was about to pronounce judgment. . . . It is quite clear that . . . it was too late for the plaintiff to dismiss."

In Bee Bldg. Co. vs Dalton, 68 Nebraska 38, a jury was empaneled to try the issues and the plaintiff having submitted his case, the defendant moved the Court to

direct a verdict in its favor. The motion was sustained but before the peremptory instruction could be given, the plaintiff asked that the case be dismissed without prejudice, and his request was granted by the trial court. The Supreme Court held this to be error. Sullivan, C. J. said:—

"The contention of counsel for plaintiff is that the trial was to the jury and that there could be no submission of the case until the jury had complete authority to deal with it. This argument is plausible, but we cannot believe that it is sound. It is true a jury was impaneled, but it is equally true that the case was tried by the court, and not by the jury. The case was submitted on an issue of law, and the determination of that issue eliminated the jury and ended the controversy. After it had been adjudged that the plaintiff had no case, and that there was no issue of fact to be decided, the direction, reception and recording of a verdict would have been mere ceremonial acts. These acts would, we know, be in accordance with conventional procedure; they would satisfy the requirements of judicial formalism, but they would be useless and idle. . . . To direct a jury to return a verdict in favor of the defendant would have been to command the triers of fact to ratify a decision already made by the court upon a question of law. When the legislature, in section 430, spoke of 'the final submission of the case to the jury,' it must have had in mind . . . the submission of a disputed question, which might be resolved by the jury in favor of either party. In this case there was no issue of fact; the court so decided. . . . In every such case the judgment rests, not on the decision of a question of fact, but wholly and exclusively upon the decision of a question of law."

In C. R. I. and P. Ry vs Reynolds, 157 Okla. 268, 12 Pac. (2nd) 208, The Supreme Court of Oklahoma held that a motion to dismiss the action as a matter of right made after the Court had indicated a ruling adverse to the

plaintiff on the defendants' demurrer to the evidence, came too late.

In St. Joseph D & C R. R. vs Dryden, 17 Kansas 278, Mr. Justice Brewer said:—

"Where a demurrer to the evidence is sustained, the case is ready for judgment. It has been finally submitted to the court, and the plaintiff has no more right to dismiss then than he has after a verdict is returned. The case is decided, and the plaintiff has no right to avoid that decision by a dismissal."

To permit a party to dismiss under such circumstances is, in substance, to grant him a new trial after he has been fairly defeated and to deprive his adversary of the fruits of a fairly won victory. It is contrary to good sense and sound policy to allow a party to take his case from one Court to another until fortune favors him with a judge who is willing to accept his view of the law or the evidence. Such a mode of procedure would be trifling with the Courts as well as with the rights of defendant.

In the case at bar, the evidence was in, counsel had argued their points for a binding direction, and the jury was ready to receive the Court's instruction or direction. Had the Court proceeded to instruct the jury to find a verdict upon the evidence, counsel's right to suffer a voluntary nonsuit at any time before it had reached a conclusion and was ready to state it would be undoubted. But the Court had effectively announced its decision. There was nothing for the jury to do but register the Court's decree and it was in readiness to do so. This was no more than a mere ceremonial act not necessary to a decision of the issue. We conclude therefore that the jury was ready to give in its verdict when counsel offered to suffer a voluntary nonsuit and the mandate of the statute was satisfied.

The motions for a new trial for judgment non obstante veredicto and for the entry of a voluntary nonsuit are overruled with exceptions to the plaintiff.