## ÆTNA LIFE INS. CO. v. MOYER.
### No. 7033.

Circuit Court of Appeals, Third Circuit.

Aug. 6, 1940.

Rehearing Denied Sept. 11, 1940.

Edward W. Warren and Walter L. Hill, Sr. (of O'Malley, Hill, Harris & Harris), all of Scranton, Pa., for appellant.

A. W. Carpenter and J. P. Carpenter, both of Sunbury, Pa., for appellee.

Before BIGGS, CLARK, and JONES, Circuit Judges.

JONES, Circuit Judge.

This case involves the rights of the plaintiff beneficiary under two policies of life insurance (each containing provisions for lifetime benefits and abatement of premium payments if the insured became totally disabled) which the defendant in-

surer had issued on the life of the beneficiary's husband. The questions raised concern the insured's alleged disability and whether it was properly established so as to vest in him a right to the benefits called for by the policies.

As the pleadings stood at the time of trial, the plaintiff claimed for the face amounts of the policies as benefits due upon the insured's death and also for the benefits alleged to have been due the insured for total disability during the last several years of his life. At the request of the defendant, the trial court submitted several interrogatories for the jury's answer in connection with its general verdict. The jury returned a general verdict for the plaintiff for a sum considerably less than the amount of the plaintiff's claim. The verdict was irreconcilable with the plaintiff's claim or any of the items thereof and it was also inexplicable on the basis of the jury's answers to the interrogatories. Consequently, upon motion of the plaintiff, the court set the verdict aside and awarded a new trial. The court having reserved at trial a point for a directed verdict for the defendant, the latter accordingly moved for judgment n. o. v. upon the whole record. It is from the order of the court below dismissing the motion for judgment that the defendant took the present appeal.

In support of its motion, the defendant contends (1) that the plaintiff's claims under the policies are barred because of the insured's failure to furnish satisfactory evidence of his alleged total disability prior to the lapsing of the policies in his lifetime for nonpayment of premiums, and (2) that the plaintiff's amendment of her statement of claim, averring the insured's total disability and claiming therefor benefits said to have accrued during the insured's lifetime, introduced a new cause of action after the running of the statute of limitations.

The insured died August 16, 1931. The policies in suit had been taken out in February 1925 and, according to their terms, were incontestable at the expiration of a year from their issue except for nonpayment of premiums. Suit for death benefits under the policies was instituted by the beneficiary on August 16, 1933. The plaintiff's statement averred the insured's compliance with the terms of the policies to the time of his death. No claim was then made for benefits due the insured in his lifetime because of disability. The defendant denied liability for the death benefits on the grounds that the policies had severally lapsed on August 14 and August 24, 1929, for nonpayment of premiums and that the automatic extended insurance existing thereafter under the policies had expired prior to the insured's death without a reinstatement of the policies. On January 11, 1936, the plaintiff amended her statement of claim by averring the insured's total and permanent disability from June 1, 1928 (later amended to read September 1, 1927) to the date of his death; and, by reason of the provisions of the policies, the plaintiff claimed that premium payments required by the policies had been abated by the insured's total and permanent disability, that evidence thereof was furnished the insurer on December 1, 1927, and that benefits were also due under the policies for the insured's disability from September 1, 1927 until his death on August 16, 1931.

The appellant argues that the court below erred in concluding that the matter of the defendant's timely knowledge of the insured's disability depended, under the testimony in the case, upon a question of fact which was for the jury to resolve; and, further, in holding that such knowledge, if it be found to exist, served to supply the insurer with the requisite evidence of the insured's disability. The propriety of a provision in a policy requiring due proof of an insured's disability is self-evident. It is designed to give the insurer reasonable opportunity to investigate and test the validity of the claim. Lyford v. New England Mutual Life Ins. Co., 122 Pa. Super. 16, 29, 184 A. 469; Lucas v. John Hancock Mutual Life Ins. Co., 116 Pa. Super. 298, 301, 176 A. 514. Compliance with such a requirement has been held to be a condition precedent to the assertion of a claim under a policy. Equitable Life Assurance Society v. McCausland, 331 Pa. 107, 200 A. 85; Lyford v. New England Mutual Life Ins. Co., supra; Lucas v. John Hancock Mutual Life Ins. Co., supra.

The immediate inquiry goes directly to the question of the insured's duty to furnish the company in his lifetime with satisfactory evidence of his disability and the manner and form in which that duty was to be discharged. The appellant contends that the duty in the premises rests solely upon the insured; and, in support of this contention, the appellant points to

certain provisions of the policies which we quote below.[1] It is clear that the provision upon which the appellant relies has to do with the time when disability benefits accrue. Whether they become payable within the ninety days following the onset of the disability or after the ninety day period depends upon whether evidence of the disability satisfactory to the company has or has not been received by the company at its home office within the ninety days. Whose duty it is to transmit evidence of an insured's disability is left entirely to inference. The policy provision merely specifies that the evidence shall be received by the company at its home office. The significance 'of this will be the more apparent when we come to consider the testimony of the defendant's agent who visited the insured in connection with his policies when the latter was seriously incapacitated, as the agent admittedly observed. So far as the company's knowledge of the insured's disability is concerned, evidence thereof is the policy's requirement, not formal proof, and, being evidence, it can be either oral or written. The policy makes no discrimination. Furthermore, the condition that the evidence be satisfactory to the company can mean no more than that it should be legally satisfactory. The policy does not leave it to the caprice of the company to reject arbitrarily any evidence which might reasonably inform the company of its insured's disability and, hence, of its own possible liability.

■ The importance of these matters, to a construction of the policy provision, is obvious when we consider that the policy is to be construed strictly against the insurer (Stipcich v. Metropolitan Life Ins. Co., 277 U.S. 311, 322, 48 S.Ct. 512, 72 L.Ed. 895; Stonsz v. Equitable Life Assurance Society, 324 Pa. 97, 108, 187 A. 403, 107 A.L.R. 178; Lewis et ux. v. Fidelity & Casualty Co., 304 Pa. 503, 508, 156 A. 73) and that doubts and ambiguities arising out of the policy's provisions are to be resolved favorably to the insured. Stroehmann v. Mutual Life Ins. Co. of New York, 300 U. S. 435, 439, 57 S.Ct. 607, 81 L.Ed. 732.

■ The most significant thing of all about the policy provision upon which the appellant relies is that it nowhere provides that the insured's failure to furnish within ninety days evidence of his disability satisfactory to the company shall abate all claims under the policy based upon the disability. In fact, the clear implication of the provision is to the contrary. The policy specifies that, if satisfactory evidence that the disability is permanent has *not* been furnished within ninety days, then "such disability shall be presumed to be permanent" and "In such a case, benefits shall accrue upon the expiration of the said ninety days, but not from a date more than six months prior to the date that evidence of such disability satisfactory to the Company is received at its Home Office". It follows, therefore, that once total and permanent disability in fact occurs, while the policy is in force, the insured's right to the disability benefits may thereafter be claimed and enforced until barred by the statute of limitations and subject further to the policy's own limitation that such benefits shall not accrue from a date more than six

---

[1] "Permanent Total Disability Provision

"If, before default in payment of premium, the insured becomes totally and permanently disabled by bodily injuries or disease and is thereby prevented from performing any work or conducting any business for compensation or profit, the following benefits will be available:

"When Such Disability Occurs Before Age Sixty.

"A waiver of the payment of premiums falling due during such disability and

An income of ten dollars a month for each one thousand dollars of the sum insured payable to the life owner each month in advance during such disability.

"If before attaining the age of sixty years the insured becomes totally disabled by bodily injuries or disease and is thereby prevented from performing any work or conducting any business for compen-

sation or profit for a period of ninety consecutive days, then, if satisfactory evidence has not been previously furnished that such disability is permanent, such disability shall be presumed to be permanent. In such a case, benefits shall accrue from the expiration of the said ninety days, but not from a date more than six months prior to the date that evidence of such disability satisfactory to the Company is received at its Home Office. No benefit shall accrue prior to the expiration of said ninety days unless during that period evidence satisfactory to the Company is received at its Home Office while the insured is living that the total disability will be permanent, in which event benefits will accrue from the commencement of disability."

Note: The insured was forty-two years old at the time of his death.

months prior to the furnishing of evidence of disability. Such was the construction placed upon an identical policy provision in Ætna Life Ins. Co. v. Davis et al., 187 Ark. 398, 60 S.W.2d 912, 913, and it is our opinion that the provision warrants the construction. The clause which calls for the furnishing of satisfactory evidence of disability while the insured is living applies only to the accrual of benefits prior to the expiration of ninety days from the incidence of the disability.

■ From the express terms of the disability provision in the policy and the applicable rules of law to which we have referred, the conclusion logically ensues that the waiver of premiums and the right to benefits attach upon the existence in fact of the insured's total and permanent disability, if the policy be then in force, and the benefits, both as to waiver of premiums and disability payments, accrue upon the company's receipt of evidence of the insured's disability within or without the ninety days following the onset of the disability, except that, when evidence of disability is not received by the company within the ninety days, then benefits shall not accrue from a date more than six months prior to the company's receipt of such evidence. When, however, evidence of an insured's disability is received by the company while the policy is yet in force, either within or without the ninety day period, and no right to benefits by reason of the disability is determined or allowed by the company, the policy may not thereafter be voided for nonpayment of premiums until there is a due determina-

tion of no disability which is either assented to by the assured or is found adversely in an action instituted within the period of the applicable statute of limitations. The law does not look with favor upon an insurer's own forfeiture of its contract. Stipcich v. Metropolitan Life Ins. Co., supra; McMaster v. New York Life Ins. Co., 183 U.S. 25, 40, 22 S.Ct. 10, 46 L.Ed. 64; and, a court ordinarily inclines against enforcing such a forfeiture. Farmers' & Mechanics' National Bank v. Dearing, 91 U.S. 29, 35, 23 L.Ed. 196. This can be no less so where the alleged basis for the forfeiture rests upon a question of fact which the insurer assumes to conclude arbitrarily in its own favor.

■ This brings us to a consideration of what the evidence was with respect to the insured's disability which the company received and when and how it received it. In the fall of 1927, the policies then being in full force and effect and therefore incontestable except for subsequent nonpayment of premiums, one Bichner, an agent for the company, in the performance of his official duties, called upon the insured in regard to the latter's policies.[2] The purpose of the visit, as testified to by Bichner, was "what an insurance agent would call service" and to acquaint the insured and the beneficiary with respect to the privileges allowed under the policies and to "put into effect any of these [policy] provisions". For this purpose, it was a part of the agent's duty to obtain the necessary forms, which he would "witness, execute and forward * * * to the general agent in the field".[3] Bichner observed

---

[2] Bichner testified at the trial below in part as follows:

"Q. Mr. Bichner, what was your official designation with the company? A. I was to be considered a regular agent and in addition to that the district of the Pursell Agency covering some twenty-one or twenty-two counties was divided into four divisions. In each division there was a captain and I was appointed captain which was also assistant to the general field supervisor. (Record, pp. 143, 144)

* * *

"Q. Did you visit the home of Mr. Charles Moyer [the insured] and his wife [the beneficiary]? A. I did.

"Q. When? A. In the fall of 1927.

"Q. Did you see Mr. Moyer? A. I saw Mr. Moyer.

"Q. And you saw Mrs. Moyer? A. Mrs. Moyer.

* * *

"Q. You say you received a service card. Was that part of your business? A. That is part of every agent's business. It was a custom in those days for the company to send out once a year a service card to the agent in the field that he might call on those whom he had insured." (Record, pp. 131, 132)

[3] With regard to his visit to the Moyers in the fall of 1927, Bichner testified:

"Q. Did you have any conversation with them [the insured and the beneficiary]? A. Yes, sir.

"Q. With reference to what? A. In reference to their policies, the payment of premiums.

"Q. Will you detail that conversation? A. The purpose of that call originally was to give the policy-holder what an insurance agent would call service. I believe the original notice I had in this case came through the regular form which was sent

that the insured was sick and that he sat in a chair in a stupor—a condition which caused Bichner to carry on the conversation with the insured's wife so that he "would have someone to understand what * * * [he] was trying to explain about what was in these policies"; and he saw that the insured "was physically unable to really move around like an active normal person could" (Record, pp. 139, 140). What Bichner thus saw and heard of the insured's incapacity served to indicate that the latter was suffering from bodily disease which, in reasonable probability, prevented him "from performing any work or conducting any business for compensation or profit for a period of ninety consecutive days". Total disability does not mean helplessness or complete disability. Lumbra v. United States, 290 U.S. 551, 559, 560, 54 S.Ct. 272, 78 L.Ed. 492. It means "inability to perform any of the duties of any occupation which the insured might be ordinarily capable of performing" (Cooper v. Metropolitan Life Ins. Co., 317 Pa. 405, 408, 177 A. 43, 44) and not that the insured is "absolutely helpless, mentally and physically" (Amrovcik v. Metropolitan Life Ins. Co., 119 Pa.Super. 176, 180, 180 A. 727, 729, quoting the definition in the Cooper case, supra). See Couch on Insurance, Vol. 7, Sec. 1670, p. 5767. To show that the insured was not totally and permanently disabled, the appellant relies upon the expert opinion of a doctor who was directly interrogated in terms of the policies' definition of disability without apparent or disclosed knowledge or understanding on the part of the witness as to the legal intent and meaning of the definition; and, even then, the doctor limited his answer, with respect to the insured's supposed ability to work, to one particular date, namely, to "the time he [the insured] left the hospital". In Lumbra v. United States, supra, Mr. Justice Butler, speaking for the Supreme Court, said that an insured's actually having done some work was "not of itself sufficient to defeat his claim of total permanent disability. He may have worked when really unable and at the risk of endangering his health or life". [290 U.S. 551, 54 S.Ct. 276.] The expert opinion concluded no fact upon which the court could act as a matter of law. Moreover, in all cases of doubt, provisions for total disability "should be and generally are liberally and fairly construed so as to give the insured the indemnity supposedly contracted for, to the exclusion of any narrow or technical interpretation which would defeat the intention of the parties". Couch on Insurance, Vol. 7, Sec. 1670, p. 5767.

■ At trial, Bichner testified that he did not advise the insured or the beneficiary of the insured's rights under the disability clause in the policies, although, professedly, he was there to explain the insured's various privileges under the contracts. While the agent's conduct, in the light of his knowledge as to the insured's physical condition, did not serve to confer upon the insured a right which he would not otherwise possess, nevertheless the agent's failure to act appropriately in such regard did not make the company's duty to perform faithfully its contract obligations any the less real or imperative. Bichner ineffectually sought to extenuate for his failure to transmit to the company a form showing the insured's disability by saying that "the family was absolutely strangers to me and I did not feel I should report conditions such as he told to me unless I had seen more to verify it. That is the reason the report was not sent in in the first instance". But, when counsel

---

to the agent in the field once a year for the purpose of servicing the policy and acquainting them with the privileges they are allowed under this contract. It was in this original call when I met Moyer. I visited that home and found Moyer, Mrs. Moyer and a daughter approximately fifteen years old. They explained the situation regarding finances and also his physical disability. Mr. Moyer was in a rocking chair in the living room of the house. When he told me of his physical condition I advised a loan be made against the cash value of these policies so the premiums could be carried on, thereby the full amount of the insurance would be in force. (Record, p. 132)

* * *

"Q. Mr. Bichner, what was your course of procedure as directed and practiced between yourself and the company in the course of your agency?
* * *
"A. To solicit business for the company and to inform the policy-holder of the privileges allowed under various clauses of the policy, and in order to execute or rather put into effect any of these provisions we request forms which we witness, execute and forward those to the general agent in the field." (Record, pp. 137, 138)

for the plaintiff endeavored to ascertain whether Bichner had made further investigation with respect to the insured's physical condition so as to be able to report thereon, counsel for the defendant company objected and the objection was sustained. The appellant cannot, therefore, complain that Bichner's knowledge of the insured's disability stands undisputed and his failure to report the disability to the company, unexplained.

Bichner's failure to report the insured's disability to the company is as binding upon the company as if he had so reported fully and promptly. The agent's mistake or inattention to his duty will not be permitted to prejudice the insured; his knowledge of the insured's disability, gained in his official capacity, supplied the policy's requirement of evidence; and the insurer was estopped thereafter from asserting a failure, on the part of the insured, to file a formal claim. Evans v. Metropolitan Life Ins. Co., 294 Pa. 406, 409, 144 A. 294. Under the circumstances here obtaining, the agent's failure to transmit the claim was tantamount to his representing to the insured and the beneficiary that no claim was then cognizable under the policy. In such case, the agent's knowledge binds the company. Arlotte v. National Liberty Ins. Co., 312 Pa. 442, 445, 446, 167 A. 295, 108 A.L.R. 896. An insurer is not permitted to take advantage of its insured's inactivity which its own agent's conduct directly induced. Gough v. Halperin, 306 Pa. 230, 235, 159 A. 447; Fedas v. Insurance Company of Pennsylvania, 300 Pa. 555, 559, 151 A. 285.

As the testimony in the case would fully support findings that the insured became totally and permanently disabled from bodily disease in the fall of 1927 and that the company's accredited representative had due knowledge thereof, the court below rightly held that the question of the company's knowledge of the insured's disability, through its representative Bichner, was a matter for the jury and that, if such knowledge was found to exist, it would supply the legal requirements of the policies with respect to the furnishing of evidence of the insured's disability so as to accrue the benefits provided for by the policies. Consequently, the court below could not properly have entered a judgment for the defendant.

The plaintiff's amendment of her statement of claim did not introduce a new cause of action so far as the claim for death benefits was concerned. From the outset of the litigation, the suit was upon the contracts of insurance for the benefits due for the insured's death. The amendment did not change that claim. Its additional averment of the disability of the insured in his lifetime constituted a more specific allegation in support of the original averment that the insured in his lifetime "performed the conditions and covenants stipulated and required to be performed in said policies". But, the cause of action remained the same. Frankel v. Donehoo, 306 Pa. 52, 56, 158 A. 570; Goldberg v. Friedrich, 279 Pa. 572, 576, 124 A. 186. In any event, the statute of limitations, as to a contract right for the insured's death, had not run at the time of the amendment. Therefore it was obviously not objectionable on the ground that it introduced a new cause of action after the running of the statute. However, the amendment did introduce a new cause of action with respect to the claim for monthly disability payments which accrued in the insured's lifetime. The statutory period began to run when the right to sue therefor accrued. New York & Pennsylvania Co. v. New York Central R. R. Co. et al., 300 Pa. 242, 150 A. 480. And the right to sue accrued as each disability payment fell due monthly. Bush v. Stowell, 71 Pa. 208, 10 Am.Rep. 694. Consequently, the monthly disability payments which fell due more than six years before the filing of the amendment were barred by the statute and the defendant's objection to the amendment must be enforced as to the claims for monthly payments which were outlawed at the time of the filing of the amendment. The appellee urges that the insurer's conduct in the instant case, through its agent Bichner, deprives appellant of the right to plead the statute of limitations, citing a number of decisions under the applicable local law in support of that view. Arlotte v. National Liberty Ins. Co., supra; Fedas v. Insurance Co. of Pennsylvania, supra; Nanty-Glo Borough v. American Surety Co., 316 Pa. 408, 175 A. 536; Deemer et al. v. Weaver, Executrix, 324 Pa. 85, 187 A. 215. What the legal effect upon the insurer's plea of the statute of limitations would have been, had the insurer's conduct induced the beneficiary not to file suit for her claims prior to the running of the statute, we need not decide. It appears of record in this case that the beneficiary sought and obtained independent counsel

and advice with respect to her rights under the policies several years before the statute of limitations had run against any of her claims. Her action, therefore, in not pressing timely her claim for the monthly benefit payments must be deemed to have been taken advisedly; and, thereby, she is bound.

■ We do not think that the appellant's contention with respect to the application for insurance which the insured signed after his alleged total and permanent disability had developed requires any extended comment. At most, it constituted no more than a matter for the jury's consideration as possible impeachment of the insured's alleged total and permanent disability prior to and at the time of his signing the later application. Nothing ever came of that application and no contract right is founded upon it. As might have been expected in view of the testimony in this case with respect to the insured's bad physical condition, his reapplication was promptly rejected by the defendant's medical examiner. The testimony indicates that the insured's signing of the application for new insurance was done at the instance of an agent for the company.

The order of the District Court is affirmed.