**Protesto et al. v. Vassalo et ux.**

*Howard Richard,* for plaintiffs.
*Albert H. Pearce,* for defendants.

BRETHERICK, J., April 15, 1953.—The matter before us in this action of assumpsit is plaintiffs' motion to take off a compulsory nonsuit. The motion will be granted and the nonsuit removed.

"A nonsuit may be entered only in a clear case. If there is doubt of the inferences that may be drawn from the oral evidence, it must be submitted to the jury. In passing on a motion to nonsuit and in reviewing the refusal to take off a nonsuit, the oral evidence must be regarded in the light most favorable to the plaintiff, who must receive the benefit of every fact the jury might reasonably infer in plaintiff's favor from the evidence received or erroneously excluded": Kimble v. Wilson et al., 352 Pa. 275, 277.

The testimony, read in the light of this rule, presents a most unusual factual situation. Satenig Jelalian and Rose Jelalian, her daughter, were the owners of premises known as 8232 West Chester Pike, Upper Darby Township, Delaware County. Plaintiffs were desirous of purchasing the property, and so were defendants. On at least two occasions prior to May 29, 1952, the parties had submitted sealed bids for the property to Leon Kazanjian, who represented the owners. A dispute arose between plaintiffs and defendants as to who had made the higher bid. The owners were willing to accept $10,655, for the property from either

but, naturally, wished to avoid the hazard of a suit by the disappointed party.

In an attempt to resolve their differences, plaintiffs and defendants entered into a written agreement, dated May 29, 1952. The agreement, which was under seal, contained a recital of the foregoing facts, and then went on to provide that the parties would submit written sealed bids to their respective attorneys on May 29, 1952; that whichever of the two parties submitted the higher bid should be the only party entitled to enter into a written agreement of sale for the Jelalian premises, in accordance with the terms of the agreement of sale attached thereto; that the unsuccessful party would immediately execute a release to the vendors, said release being attached to the agreement; that the successful party should pay to the unsuccessful party on or before June 3, 1952, the difference between the amount of his bid and $10,655. Paragraph 4 of the agreement reads:

"It is further agreed that in the event that the vendors of premises 8232 West Chester Pike, Upper Darby, fail or refuse to sign the attached agreement of sale on or before June 3, 1952, this agreement is null and void."

The parties submitted bids, as provided in their agreement, and defendants won the right to purchase the premises with their bid of $12,250. Plaintiffs, in accordance with the agreement, thereupon executed a release to the owners and forwarded it to defendants. Defendants, through their attorney, submitted an agreement of sale to Mr. Kazanjian, the owners' agent, for execution by the owners.

On the evening of June 2, 1952, as we read the testimony, Louis Vasalo, one of the defendants, called on Mr. Kazanjian at his office, and informed him of the steps taken by plaintiffs and defendants, and also acquainted him with the fact that defendants "had got-

ten the property" with their bid of $12,250. After consultation with his attorney, Mr. Kazanjian advised the owners of all the facts in the situation. The result was that the owners refused to execute the agreement of sale, and the property was subsequently sold to a third party for $9,800.

Under cross-examination, Mr. Kazanjian testified, in part, as follows:

"Q. You advised your client not to sign?

"A. That there was a higher bid.

"Q. You advised your client not to sign the agreement of sale?

"A. No, I did not. I said there was a higher bid of $12,250, and they themselves felt that if there was a higher bid they were entitled to it."

With these facts before him, the trial judge granted defendants' motion for a nonsuit. While the facts of the case are unusual, to say the least, we think the trial judge should have required defendants to proceed with their defense. It was an express condition of the contract between plaintiffs and defendants that the vendors "sign the attached agreement of sale on or before June 3, 1952". The facts developed by plaintiffs would support a finding by the jury that Louis Vassalo, one of the defendants, by his disclosure to the owners' agent, prevented the owners from executing the agreement of sale, and was thus guilty of a breach of contract.

The controlling principle of law is contained in A. L. I. Restatement of the Law of Contracts, §315, which provides, in part:

"(1) Prevention or hindrance by a party to a contract of any occurrence or performance requisite under the contract for the creation or continuance of a right in favor of the other party, or the discharge of a duty by him, is a breach of contract, unless. . . ."

Under Comment b, it is said:

"It is immaterial whether the wrongdoer prevents some performance by the other party or by a third person if the performance is an express or constructive condition": Dilworth v. Brown & Bigelow, 128 Pa. Superior Ct. 124, 126, and cases there cited.

Williston on Contracts, §677, states the principle as follows:

"It is a principle of fundamental justice that if a promisor is himself the cause of the failure of performance either of an obligation due him or of a condition upon which his own liability depends, he cannot take advantage of the failure."

The rule as thus stated was quoted with approval in Arlotte et al. v. National Liberty Insurance Company, 312 Pa. 442, 445; and in Nanty-Glo Borough v. American Surety Company, 316 Pa. 408, 411, 13 C. J. Contracts, 648, §722.

An illustrative case may be found in Marvin v. Rogers, 53 Tex. Civ. A. 423, 115 S. W. 863. There, a contract provided that money should be paid as soon as a corporation, of which the obligor was president and manager, secured a new lease on its store. The obligor owned 49 percent of the stock of the corporation, and on the day of the execution of the obligation the obligee sold him five percent of the stock. The obligor voluntarily sold the store and the right of possession of the premises. It was held that, irrespective of his intent, the act of the obligor prevented performance of the condition and rendered the obligation absolute.

In the course of its opinion, the court said (p. 865):
"It seems clear that, where a contract is made which is performable at the time of the occurrence of a future event, the law imputes to the promisor an agreement that he will put no obstacle in the way of the happening of that event, and that he will hold himself in readiness to coöperate where his coöperation is a necessary

6

element in the happening of the contingency. If, in violation of this implied covenant on his part, he does something which prevents the happening of the event, the contract becomes absolute and must be performed as if the event had occurred (citing authorities from many jurisdictions)."

We are of opinion, therefore, that plaintiffs' motion to take off the nonsuit must be granted, and shall so order. We are not to be understood as passing upon any question of agency as between defendants, since that point has not been argued before us.

### Order

And now, April 15, 1953, upon consideration of the foregoing case, it is ordered, adjudged and decreed that plaintiffs' motion to take off the nonsuit entered in the case be, and it is, granted, and the nonsuit is hereby removed.