Fedas, Appellant, *v.* Insurance Company of the
State of Pennsylvania.

Argued April 14, 1930. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*E. J. Mullen,* with him *G. W. Moon,* for appellant.— Plaintiff was not estopped, by reason of having furnished formal proofs of loss more than sixty days after the fire occurred, from proving that defendant, within the sixty-day period, had refused to pay the loss on the specific ground that plaintiff had caused the fire, thereby waiving all other grounds of defense, including the furnishing of other proofs of loss than the affidavits of loss then submitted to defendant's adjuster: Lerch v. Bard, 153 Pa. 573; Finch v. Conrade, 154 Pa. 326; Jenkins v. Ins. Co., 282 Pa. 380; Carey v. Ins. Co., 171 Pa. 204; Simons v. Ins. Co., 277 Pa. 200; Penna. Fire Ins. Co. v. Dougherty, 102 Pa. 568; Welsh v. Assurance Corp., 151 Pa. 607; Weisberger v. Ins. Co., 250 Pa. 155; Roe v. Ins. Co., 149 Pa. 94; Powell v. Ins. Co., 2 Pa. Superior Ct. 151; Bank v. Ins. Co., 274 Pa. 129; McFarland v. Ins.

Co., 134 Pa. 590; Gould v. Ins. Co., 134 Pa. 570; Bush v. Ins. Co., 222 Pa. 419; Marsh v. Ins. Co., 90 Pa. Superior Ct. 142.

A waiver, though not an estoppel, is said to belong to that family, and has many of its elements. It is the abandonment or relinquishment of a known right: Curry v. Quality Shops, 271 Pa. 364, 373; Hill v. Epley, 31 Pa. 331; Keefer v. Keefer, 9 Pa. Superior Ct. 57; Wright's App., 99 Pa. 425; Skiles v. Sides, 37 W. N. C. 295; Hays v. Hays, 179 Pa. 277; Ormsby v. Ihmsen, 34 Pa. 462.

In ascertaining the loss resulting from the partial burning of a building covered by a policy of fire insurance, the true result is to be reached by taking the cost of reconstruction according to the conditions existing and lawfully imposed at the time when the fire occurred: Penna. Co. v. Contributionship, 201 Pa. 497; Sewing Machine Co. v. Ins. Co., 201 Pa. 645; Johnson v. Ins. Co., 218 Pa. 421; Cummins v. Ins. Co., 192 Pa. 359; Fulton Farmers Assn. v. Bomberger, 262 Pa. 43; Clydesdale Brick & Stone Co. v. Indemnity, 79 Pa. Superior Ct. 462.

*Horace Michener Schell,* with him *R. S. Hemingway,* for appellee.—The policy of insurance in question covers both building and contents and under the law of Pennsylvania such policy is indivisible: Schiavoni v. Fire & Marine Ins. Co., 48 Pa. Superior Ct. 252.

Under the circumstances, therefore, of the character of the loss involved in this proceeding there can be no question but that assured was obligated to file a proof: Lapcevic v. Ins. Co., 40 Pa. Superior Ct. 294; Ulysses Elgin Butter Co. v. Ins. Co., 20 Pa. Superior Ct. 384.

Under no rule of law can it be said that the appellant met the burden of proving the extent of the building loss.

In the absence of different provisions in the policy, the measure of recovery for a partial loss is based on the difference between the value of the property immediately

before the fire, and its value immediately thereafter, and not the amount expended in repairing the property: DiFoggi v. Assurance Co., 83 Pa. Superior Ct. 518; Penn Plate Glass Co. v. Ins. Co., 189 Pa. 255.

OPINION BY MR. JUSTICE KEPHART, May 27, 1930:

This was an action on an insurance policy for the partial destruction of a dwelling and household goods. Recovery was denied in the court below because the proof of loss had not been filed within the time limited by the contract.

The company was duly notified of the fire, and, through its agent, the owner met the adjuster who stated to her that the company would not pay the loss because she was criminally responsible for the fire. Action to establish that liability was taken by the authorities but later dropped for want of proof. In the action to recover damages for the loss, the court below held that, by filing the proof of loss several months after the time required by the policy, appellant was estopped from setting up the company's waiver of the requirement to file proof of loss in 60 days. The insured appeals.

The utmost fair dealing should characterize the transactions between an insurance company and the insured. If the insurer, having knowledge of a loss, by any act throws the insured off his guard as to the necessity of performing some duty enjoined by the policy, the insurer should not be permitted to take advantage of the failure to act. It has been held many times that an insurance company may waive filing a technical proof of loss.

Waiver may be inferred from any act evidencing a recognition of liability, or from a denial of liability on other grounds than failure to file proof of loss: Penna. Fire Ins. Co. v. Dougherty, 102 Pa. 568; Simons v. Safety Mutual Fire Ins. Co., 277 Pa. 200, 203, 204; Roe v. Dwelling House Ins. Co., 149 Pa. 94; First Nat. Bank of Mildred v. Home Ins. Co., 274 Pa. 129. Waiver may

be shown by parol in express language, or, as in this case, it may appear by necessary implication: Bush v. Hartford Fire Ins. Co., 222 Pa. 419.

Appellee had prompt notice of the loss, as its agent visited the place where the fire occurred. It had through its adjuster refused payment on other ground than failure to file the proof of loss. Of what avail was it thereafter? A "proof of loss" is to acquaint the insurance carriers with the amount of loss from the insured's viewpoint. If its representative adopts another method of ascertaining the loss, or states that it will not pay any loss, what would be the use of filing a proof of loss? A policyholder need not do a vain thing, nor is he to be prejudiced for failure to observe a technicality, the performance of which would be useless. The court below, however, acted on the authority of two Superior Court cases (Edelson v. Norwich Union Fire Ins. Co., 59 Pa. Superior Ct. 379, and Ulysses Elgin Butter Co., Ltd., v. Hartford Fire Ins. Co., 20 Pa. Superior Ct. 384) to sustain an estoppel to assert the waiver.

An estoppel exists where one by his words or conduct causes another to believe in the existence of a state of facts, inducing reliance thereon in some act of mutual concern, and the inducing person wishes to assert, prejudicially, facts in opposition to those first held out to be true, on which action was taken. This cannot be done; the one making the inducement is estopped. But one is not estopped unless the contemplated action would prejudicially injure another. Wherein was the insurance company injured, or in what respect did it alter its position after the waiver, by receiving the proof of loss, or in what aspect could the receipt be a "waiver of a waiver," as suggested? It declined to pay for a reason that afterward turned out to be without foundation. The rights of the parties were fixed. The company had contracted to pay the loss; must suit be instituted or should the insured ask for payment and submit his bill? The idea of a waiver of the waiver would dispel all ideas of ami-

cable settlement; and if a later presentation of proofs operates to bar the remedy, then logically the statement of claim filed in the action at law, containing the same information, would have the same effect. The policyholder is not to be punished for voluntarily taking a step which tends to avoid litigation.

Where a company waives the requirement of a technical proof of loss, and the insured thereafter furnishes it, he does not lose his rights under the original waiver: 26 C. J. 393; Warshawsky v. Ins. Co., 98 Iowa 221, 67 N. W. 237. See also Jenkins v. Ins. Co., 282 Pa. 380. The court below was in error in so holding, and, if the two Superior Court cases conflict with this view, they are overruled.

Because of our conclusion on this subject, it is necessary to pass on another question as to the measure of damages where there has been a partial destruction. The policy reads: "Actual cash value (ascertained with proper deductions for depreciation) of the property at the time of loss or damage, but not exceeding the amount which it would cost to repair or replace the same with materials of like kind and quality within a reasonable time after such loss or damage." We stated in Penna. Co. v. Contributionship, 201 Pa. 497, that, in ascertaining the loss resulting from the partial burning of a building, the true result is to be reached by taking the cost of reconstruction according to the conditions existing and lawfully imposed at the time when the fire occurred. And where a manufacturer of machinery insured machinery under a similar policy, we held that the measure of damages was not the market value of the property destroyed, but what it would cost the insured as a manufacturer to replace it: Standard Sewing Machine Co. v. Ins. Co., 201 Pa. 645. But this rule is not invariable. A policy should be interpreted so that it may cover the intention of the parties (Humphreys v. Nat. Benefit Assn., 139 Pa. 264); and where property is of a peculiar character and the intent of the policy is to pro-

tect the insured against its loss, the policy should be construed to effect that purpose. Thus, where the subject-matter insured is a machine, a house, a manufacturing establishment or property of that character, the rule above stated, "the cost of repairing or replacing such property as of the date on which it is injured or destroyed," applies, because the proof is readily accessible; but where property is peculiar, such as whiskey, the market price may control, since whiskey, from circumstances of make and age, by the widest stretch of imagination could not be susceptible of a proof such as required for a building: Frick v. United Firemen's Ins. Co., 218 Pa. 417. "Whiskey has a distinctive character and quality of its own," at least this court said so years ago.

Appellee contends for market value. The policy provides for indemnity to the extent of the actual cash value, with allowance for proper depreciation of the property at the time of loss, not exceeding cost of repair or replacement.

Generally speaking, actual cash value does not mean market value, as the term is understood. Market value, as here urged, embodies what a purchaser willing to buy feels justified in paying for property which one is willing but not required to sell. Market value includes factors of time, place, circumstance, use and benefit; depreciation is included, but one figure is the result of these considerations, the price to be paid. Ordinarily actual cash value has no relation to any of these factors; it is value under all times, such as the cost of manufacturing or building or book value. The policy intended something different from market value; the latter includes "depreciation," while the "actual cash value" of the policy is to be diminished by "depreciation." Actual cash value in a policy of insurance means what it would cost to replace a building or a chattel as of the date of the fire.

Where a building is entirely destroyed, the application of the rule is simple; where a building is partially destroyed, it may be difficult to arrive at actual cash value, less depreciation if it is to be considered; but difficulties cannot prevent the right to compensation. There enters into actual cash value of the part destroyed the fact that it was a part of an entire property and the use made of it. It is summed up in the idea "the cost of replacing in as nearly as possible the condition as it existed at the date of the fire."

The actual cost of new material, with deduction for depreciation, which is not sufficient to replace the building as nearly as it could be as of the date of the fire, does not comply with the policy, which was to insure against loss not exceeding the amount named in the insurance.

If the new material is to be depreciated to reach the actual cash value contemplated by the policy, the timber or part destroyed must be considered in connection with the whole structure and valued accordingly, and should reflect the use in place. The result reached is that called for in the policy,—replacement as nearly as possible, or its cost. If part of the building destroyed cannot be replaced with material of like kind and quality, then it should be substantially duplicated within the meaning of the policy.

Complaint is made that the estimate in evidence was based on the cost price of new material, without depreciation, for the restoration of a frame building at least four or five years old. This technical objection to the offer, because it was new material undepreciated, is without merit, since the estimate had value as evidence bearing on the ultimate question: Cummins v. Ins. Co., 192 Pa. 359. To sum up, actual cash value means the actual value expressed in terms of money of the thing for the purpose for which it was used,—in other words, the real value to replace. The rule established by our decisions seeks a result which will enable the parties to restore the property to as near the same condition as it

was at the time of the fire, or pay for it in cash; that was the loss insured against. Furniture in use in a home destroyed must be valued at what it was worth in cash, considering the use to which it had been put. What its value might have been to another as second-hand furniture furnishes no aid; but age with use may enter into the calculation.

The character of the evidence necessary to establish loss has been before the court. The testimony of any one reasonably experienced in values would be sufficient to enable the jury to fix in money the loss on real as well as personal property. It is not a rule of thumb but of common sense. Property should be appraised at what the witnesses believe it was worth, or what it would cost to replace it with the same or similar property.

Judgment of the court below is reversed and a venire facias de novo awarded.