**Silvio DI PRAMPERO, trading as Keystone Auto Company, Plaintiff,**

v.

**FIDELITY & CASUALTY COMPANY OF NEW YORK, Defendant.**

Civ. A. No. 17930.

United States District Court
W. D. Pennsylvania.

May 11, 1960.

Richard DiSalle, Washington, Pa., for plaintiff.

Joseph F. Weis, Jr., Pittsburgh, Pa., for defendant.

JOHN L. MILLER, District Judge.

In this proceeding, an insured brought suit on a policy of liability insurance, seeking to recover for money damages which he has become legally obligated to pay as a result of suits brought in the Court of Common Pleas of Fayette County by personal injury claimants and representatives of a decedent. Defendant insurance company denies coverage. It is alleged that on May 13, 1955, a bus owned by plaintiff and operated by one Anthony L. Petro in connection with the business of plaintiff, trading as Keystone Auto Company, was involved in an accident resulting in personal injuries, property damage and a death. Plaintiff further alleges that defendant undertook the defense of the personal injuries action in Fayette County and the settlement of the death action without notifying plaintiff of its position with respect to lack of coverage. Plaintiff contends that the accident was within the coverage of the policy and that defendant is now estopped from asserting any defense of non-coverage.

This action having been tried by the court without a jury, the court makes the following findings of fact and conclusions of law.

### Findings of Fact

1. The plaintiff is an individual residing in Greene County, Pennsylvania, trading and doing business as Keystone Auto Company, with his principal place of business in Millsboro, Washington County, Pennsylvania. The plaintiff also operates a school bus system under the name of Keystone Transit Company.

2. The Fidelity & Casualty Company of New York, defendant, is a stock insurance company having its principal place of business in New York City, New York, and regularly conducts business in Washington County, Pennsylvania.

3. The amount in controversy exceeds the sum of $10,000, exclusive of costs and interest.

4. On December 17, 1954, the defendant issued its Automobile Dealer and Repair Shop, Storage Garage and Service Station Policy No. AA116898 to Silvio DiPrampero doing business as Keystone Garage and Keystone Auto Company, which policy was in full force and effect on May 13, 1955.

5. Under the terms of the policy, in "Coverage A and B" under Insuring Agreements the defendant agreed as follows:

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the hazards hereinafter defined.

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the hazards hereinafter defined."

The limits of liability for personal injury under said policy were $25,000 for each person and $50,000 for each accident. The limits of liability for property damage was $5,000 for each accident.

6. Under the terms of said policy, in Division 1 under "Definition of Hazards" the activities insured are as follows:

"The ownership, maintenance or use of the premises for the purpose of an automobile dealer, repair shop, service station, storage garage or public parking place, and all operations necessary or incidental thereto; and the ownership, maintenance or use of any automobile in connection with the above defined operations, and the occasional use for other business purposes and the use for non-business purposes of (1) any automobile owned by or in charge of the named insured and used principally in the above defined operations, and (2) any automobile, owned by the named insured in connection with the above defined operations for the use of the named insured, a partner therein, an executive officer thereof, or a member of the household of any such person."

7. Said policy further provides under "Definition of Hazards, II Defense, Settlement, Supplementary Payments":

"As respects the insurance afforded by the other terms of this policy under coverages A, B and D the company shall:

"(a) defend any suit, against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient."

8. The aforesaid policy, under "III Definition of Insured", reads as follows:

"With respect to the insurance under coverages A, B, and D the unqualified word 'insured' includes the named insured and also includes (1) any partner, employee, director or stockholder thereof while acting within the scope of his duties as such, and any person or organization having a financial interest in the business of the named insured covered by this policy and (2) any person while using an automobile covered by this policy, and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission."

9. The aforesaid policy also provided under "Exclusions" (c):

"Under coverages A, B and C, (1) to the use by the insured of any automobile as a public or livery conveyance or for carrying property for a charge or to any aircraft."

10. By endorsement, the policy also provided that the "drive other car" pro-

visions of the policy would apply only to the named insured, that is, Silvio DiPrampero.

11. In April 1955, the plaintiff and a friend, Anthony Petro of Uniontown, Pennsylvania, who was engaged in the business of transporting steel workers between U. S. Steel plants at McKeesport and Duquesne, Pennsylvania, and Uniontown, Pennsylvania, under a P.U.C. charter, went to Indianapolis, Indiana, for the purpose of purchasing buses from the Greyhound Company.

12. Two buses were purchased, and title to the buses was placed in the name of Keystone Auto Company, and so registered in the Bureau of Motor Vehicles in Harrisburg, Pennsylvania.

13. The total purchase price for both buses was $5,000. Of this amount, $4,950 was paid to the Greyhound Company by Silvio DiPrampero, trading as Keystone Auto Company, and $50 by Anthony L. Petro at the time the buses were purchased in April 1955.

14. One of the buses, not involved in this proceeding, was taken by the plaintiff to his place of business in Millsboro, Pennsylvania, and the other bus was taken by Anthony Petro to his home in Uniontown.

15. Before beginning the trip, Petro had his name and P.U.C. number stenciled on the side of the bus involved in the accident.

16. At the time the buses were purchased and titled in the name of Keystone Auto Company, it was the intention of Anthony Petro to purchase one of the buses from the plaintiff and a conditional sales agreement was executed on April 8, 1955, between the parties whereby plaintiff sold one of the buses to Anthony Petro for $3,500, payable $1,000 down, and the balance to be financed.

17. The aforesaid contract was made in connection with financing arranged with the Yellow Manufacturing Company and the contract was then assigned to that company. Pursuant thereto, and before the accident occurred, DiPrampero received $2,500 from the finance company.

18. As an accommodation to Petro in order to save him the expense of licensing the bus for a period of only a few weeks, the registration of title in Harrisburg was allowed to remain in the name of Keystone Auto Company, until July 3, 1955, at which time title was registered in the name of Petro.

19. From the time of delivery in Indianapolis to the time of the accident, the bus remained in the control and possession of Anthony Petro with the exception of the period of time required to perform the customary state inspection at DiPrampero's garage several weeks before the accident.

20. Sometime prior to May 13, 1955, Petro made the first installment payment in connection with the conditional sales contract and procured from Travelers Insurance Company a policy for collision coverage on the bus, listing as owner Anthony L. Petro. After the accident, repairs to the bus were paid for by Travelers pursuant to its collision policy.

21. On May 13, 1955, Anthony Petro was the owner of the bus involved in a collision while on route from his home to the plaintiff's place of business in Millsboro.

22. The trip was being made by Petro as an agent or employee of the plaintiff for the purposes of making a charter run to transport school children from the Nemacolin School to Pittsburgh, pursuant to the P.U.C. rights granted the plaintiff, trading as the Keystone Transit Company.

23. Petro had no P.U.C. rights applicable to such charter trips.

24. Because of the negligent operation of the bus by Petro, several people were injured and one death occurred, whereupon suits were brought in the Court of Common Pleas of Fayette County by the personal injury claimants and also the representatives of the deceased against Silvio DiPrampero, trading as Keystone Auto Company and Keystone Transit Company and Anthony L. Petro. The complaints in both lawsuits contained allegations of negligence

which came within the coverage of the policy.

25. Upon timely notice from plaintiff of the institution of the two lawsuits, the defendant wrote to the plaintiff advising him that it would defend the aforesaid suit at No. 420 June Term, 1955, at the defendant's own expense and up to the limits of its coverage. The letter stated that the defendant would defend the plaintiff only in his capacity as Keystone Auto Company.

26. Following the institution of the two lawsuits, the defendant engaged the services of Attorney Henry R. Beeson of Uniontown, Pennsylvania, to represent the plaintiff, trading as Keystone Auto Company, in both actions, and Attorney Beeson entered his appearance and did represent plaintiff in that capacity in both actions.

27. Following the institution of the two lawsuits, the plaintiff himself engaged the services of Attorney Henry R. Beeson of Uniontown, Pennsylvania, to represent his other uninsured interests in both actions and Attorney Beeson did represent plaintiff in that capacity in both actions.

28. Following trial, on April 19, 1956, in the aforesaid action at No. 420 June Term, 1955, the jury returned verdicts as follows: "For the plaintiff James Henry McDonald and against the defendants Anthony L. Petro and Silvio DiPrampero, Keystone Auto Company and Keystone Transit, in the amount of $413.-59; for the plaintiff Maxine Delores McDonald and against the defendants Anthony L. Petro and Silvio DiPrampero, Keystone Auto Company and Keystone Transit in the amount of $1,771.00; for the plaintiff Colleen Mae Taylor and against the defendants Anthony L. Petro and Silvio DiPrampero, Keystone Auto Company and Keystone Transit, in the amount of $2,644.30." Judgments were entered against Silvio DiPrampero and Anthony L. Petro in accordance with said verdicts.

29. Motions for judgment n. o. v. were filed on behalf of DiPrampero but were refused by a court en banc. No appeal was taken because counsel feared that a new trial might be granted and that a verdict considerably in excess of that obtained at the first trial might result, if a retrial were had.

30. In the death action at No. 582 March Term, 1956, the plaintiff together with Anthony L. Petro, as defendants in said action, entered into an agreement of settlement with Eleanor Bennett, Administratrix of the Estate of John E. Bennett, Jr., deceased, whereby said suit was settled for the total sum of $35,000, which settlement was fair and reasonable.

31. Attorney Beeson was paid by plaintiff for services rendered in the personal injury action, but he did not submit a bill to plaintiff for services rendered in the death action.

32. Although the defendant as early as August 1955, was fully aware of the facts with respect to ownership and intended use of the bus, it undertook the defense of the two lawsuits without any reservation of rights or non-waiver agreement.

33. Subsequent to the termination of the two lawsuits, the defendant refused to pay the amounts of the verdicts and the settlement.

### Discussion

██ ██ As a general rule, it is true that

"Where an insurance company, under an indemnity contract, takes charge of the defense on which liability rests, it will be estopped from thereafter questioning the claim either because it was beyond the terms of the policy or because the latter was procured by a breach of some warranty." Malley v. American Indemnity Company, 1929, 297 Pa. 216, 224, 146 A. 571, 573, 81 A.L.R. 1322; Perkoski v. Wilson, 1952, 371 Pa. 553, 92 A.2d 189.

However, it is equally true that the doctrine of estoppel has no application in the absence of injury. Atlantic Refining

Company v. Wyoming National Bank, 1947, 356 Pa. 226, 51 A.2d 719, 170 A. L.R. 1060; Fedas v. Insurance Company of Pennsylvania, 1930, 300 Pa. 555, 151 A. 285; Rigby v. Great Atlantic & Pacific Tea Co., 1939, 139 Pa.Super. 543, 13 A.2d 89, affirmed 1942, 344 Pa. 674, 25 A.2d 401; 19 Am.Jur., Estoppel, § 83 et seq.; 14 Pa.Law Encyclopedia, Estoppel, § 25. An essential element of estoppel is that the party claimed to be estopped must have acted in such a way as to cause the complaining party to change his position to his injury in reliance thereon. Fedas v. Insurance Company of Pennsylvania, 1930, 300 Pa. 555, 560, 151 A. 285, 287.

▆ In both Malley and Perkowski, the injury sustained by the insured was the surrender to the insurance company of the exclusive conduct of the case. In the instant case, plaintiff has failed to allege, nor can the court perceive, any element of injury. Defendant was under a contractual obligation "to undertake the defence, until it could confine the claim to a recovery that the policy did not cover * * *." Lee v. Aetna Casualty & Surety Co., 2 Cir., 1949, 178 F.2d 750, 753; Cadwallader v. New Amsterdam Casualty Co., 1959, 396 Pa. 582, 152 A.2d 484, 72 A.L.R.2d 1242. While the defendant at no time prior to the termination of the two lawsuits gave any clear indication to plaintiff that it would deny coverage, nevertheless plaintiff was not compelled to surrender the exclusive conduct of the case. Plaintiff retained counsel of his own choice to represent his uninsured interests, i. e., DiPrampero trading as Keystone Transit Company and DiPrampero trading as Keystone Auto Company insofar as liability might be incurred in excess of the limits under his coverage with defendant. There is nothing to indicate that plaintiff was not entirely satisfied with this individual representation. Moreover, the parties have stipulated that the settlement agreement in the death ac-

tion was fair and reasonable, and credible testimony has been received that the verdicts in the personal injuries action were favorable to DiPrampero.

McGee v. United States Fidelity & Guaranty Co., 1 Cir., 1931, 53 F.2d 953, is a remarkably similar case. There the insurance company undertook the defense of a malpractice action without a reservation of rights. After certain facts which revealed non-coverage appeared during the course of the trial, the company immediately gave notice of disclaimer. During the entire trial, the insured was represented also by individual counsel who remained active throughout the case. In an action brought by the insured against the insurance company to recover the amount of the verdict, the court held that under the circumstances the company was not estopped to assert the defense of non-coverage. In refusing to invoke the estoppel doctrine, the court reasoned that since the insured had individual counsel, he was in no way prejudiced by the conduct of the company.

In determining the question of coverage and the effect thereon of the verdicts in the personal injuries actions in Fayette County, the court initially observes that the denomination in the pleadings of the fictitious names under which DiPrampero conducted his two enterprises does not serve to add as party defendants two separate entities. The court in the Fayette County actions properly was not concerned with which "hat" DiPrampero wore at the time of his alleged negligence. Such incidental questions arose solely between DiPrampero and his insurance carriers.[1] Any negligence attributable to DiPrampero, acting as either Keystone Auto or Keystone Transit, entitled claimants to recover. Thus it is incumbent upon this court to determine the precise acts of negligence upon which the jury based its verdicts.

Insofar as DiPrampero's coverage with defendant is concerned, the only cir-

---

1. American Fidelity & Casualty Company had issued a policy of liability insurance covering the charter rights of DiPram-

pero, trading as Keystone Transit Company.

cumstances occurring on May 13, 1955, under which defendant might become obligated to its insured are twofold: first, if DiPrampero were negligent in his inspection of the brakes and such negligence was the proximate cause of the injuries and death; or second, if the bus were being used in connection with the business of Keystone Auto Company.[2] The question of ownership is unimportant except as it tends to shed light on the intended use of the bus.

An examination of the testimony in the personal injuries action fails to reveal any evidence which would support a jury finding as to negligent inspection. The only testimony on this point is that the brakes were inspected by Keystone Auto Company at an indeterminate time prior to the accident, that prior to May 13, 1955, Petro experienced no difficulties with the brakes, and that the accident occurred when Petro was unable to bring the bus to a stop by applying the brakes. Moreover, all the credible testimony in this case clearly points to the fact that at the time of the accident, the bus was being used in connection with the operations of Keystone Transit Company. While the testimony of Petro and DiPrampero in this court was contradicted to a large extent, both unqualifiedly testified in the personal injuries action that the sole purpose for Petro's driving the bus from his home to DiPrampero's garage was to make a charter run to Pittsburgh under DiPrampero's P.U.C. authority. This is supported by the testimony of Karl Loughead, principal of the Nemacolin Public School, who stated that he had chartered a luxury bus from DiPrampero for 3:45 P.M. to take a group of school children to Pittsburgh, but that DiPrampero had furnished a standard school bus which arrived late. Considering the fact that Petro's bus was a luxury type bus, the court must conclude that the school bus was substituted by DiPrampero after learning that Petro's bus was involved in the accident and would be unavailable for the charter trip. The

use of this bus as a public or livery conveyance is expressly excluded from the coverage afforded by defendant.

### Conclusions of Law

1. The court has jurisdiction over the matter in controversy.

2. Defendant is not estopped from asserting the defense of lack of coverage.

3. The plaintiff is not entitled to recover from defendant any amounts for which he became obligated by reason of the accident of May 13, 1955.

---

**2.** The parties have stipulated that for the purposes of this suit, Anthony Petro is considered to have been negligent in the operation of the bus.