261 So.2d 492 (1972)
LITITZ MUTUAL INSURANCE CO.
v.
Earl M. BUCKLEY, Exec. of the Estate of Mrs. Margaret L. Buckley.
No. 46505.
Supreme Court of Mississippi.
April 25, 1972.
*493 Bacon & Smith, Jackson, for appellant.
Norman Breland, Holleman & Necaise, Gulfport, for appellee.
SUGG, Justice:
This is an appeal by Lititz Mutual Insurance Company, appellant, from a judgment of the Circuit Court of Hancock County, Mississippi, in favor of Earl M. Buckley, Executor of the Estate of Mrs. Margaret L. Buckley, appellee, for damages to the Buckley home and its contents sustained during Hurricane Camille in August, 1969.
Appellant issued its insurance policy to Mrs. Margaret L. Buckley on her home in the amount of $10,000 and on household and personal property located in the home in the amount of $5,000.
The jury awarded appellee damages in the amount of $13,950 and from this jury verdict appellant appeals and assigns as error the following:
1. The court below erred in permitting the testimony of Eric Anderson, [sic] who was in a boat up the river seven miles from plaintiff's property.
2. The court below erred in not requiring proof of the "actual cash value" of the contents as required by the policy.
3. The court below erred in granting plaintiff's instructions numbers 3 and 6.
4. The jury's verdict was excessive.
5. The verdict of the jury was based on conjecture, surmise, speculation and guesswork and was against the overwhelming weight of the evidence.
Eric Atkinson, witness for the appellee, was permitted to testify that he and other persons took six boats from the Gulfport Harbor up the Jordan River to a point about 7 miles from the property in question; that after tying up the boats the witness went back to Gulfport for his automobile at approximately 5:30 p.m. and brought it to the bridge near where the boats were anchored; that the storm approached from the southeast and the wind increased in velocity until "Things started flying through the air, tree limbs and trees, whole trees"; that he counted between 5 and 7 small tornadoes in the hurricane; that about 12:30 a.m. or 1:00 a.m. the weather became dead calm for a period of 45 minutes to 1 hour; that the water was smooth during the period of calm; that the wind had been blowing about 4 hours before the dead calm; that after the period of calm the wind came from the northwest and the tide rose 8 to 10 feet; that the wind blew for approximately 4 hours after the eye of the storm passed over him, but with an intensity less than before the calm; that the tide was 6 feet above normal when *494 he arrived at the place where the boats were anchored; and that the tide did not rise suddenly.
The admission of the testimony of this witness was not error because the winds in a hurricane are more intense immediately around the eye of a hurricane and appellee was entitled to show that the eye of the hurricane passed within 7 miles of the insured property.
By the second assignment of error appellant claims that the court should have limited proof of loss of the contents to "actual cash value."
The insuring clause of the policy provides:
[D]oes insure the insured named above and legal representatives, to the extent of the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after such loss, without allowance for any increased cost of repair or reconstruction by reason of any ordinance or law regulating construction or repair, ...
Appellant correctly observes in its brief that the meaning of the term "actual cash value" in an insurance policy has never been decided in Mississippi. Appellant then cites cases from other states and urges that this Court adopt the rule that "actual cash value" means the sum of money the insured goods would have brought for cash, at market price, at the time when, and place where, they were destroyed or damaged.
Appellant thus urges that we adopt market value as a test of the actual cash value of household furniture, personal effects, and the like.
We reject market value as the test of the actual cash value because it is common knowledge that household furniture and personal effects ordinarily have no well recognized market value except as secondhand articles; that the value of such property to the owner is not limited to the price which could be realized by sale in the market.
In Fedas v. Insurance Co. of State of Pennsylvania, 300 Pa. 555, 151 A. 285 (1930) the Pennsylvania court held that actual cash value in a policy of insurance means what it would cost to replace a building or a chattel as of the date of the fire. With reference to furniture, the Court stated:
Furniture in use in a home destroyed must be valued at what it was worth in cash, considering the use to which it had been put. What its value might have been to another as secondhand furniture furnishes no aid; but age with use may enter into the calculation. (300 Pa. 564, 151 A. 288).
In Fire Association of Philadelphia v. Coomer, 158 S.W.2d 355 (Texas Civ.App. 1942), the policy sued on provided:
"This company shall not be liable beyond the actual cash value of the property at the time of the loss, with proper deductions for depreciation, however caused, and shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality."
The court instructed the jury that the term "actual cash value" meant the real worth in money of the property to the owner for the purpose for which such property was being used at the time and place inquired about. The Texas court adopted the replacement cost as the test of actual cash value.
We hereby construe the policy to mean that "actual cash value" means replacement cost of household furniture and furnishings insured by the policy in question.
The only witness testifying about the value of the household property was appellee, Buckley, who testified as to the *495 age and condition of the property, and further stated that the property cost $10,205.45 when purchased. Some of the property was inherited by Mrs. Buckley, some purchased by her and some purchased by appellee.
Although there was no direct evidence of the replacement cost of the personal property destroyed, except as to several items where the amounts were furnished by Jet Reaves, the testimony as to original cost, age and condition of the property was sufficient to support the verdict of the jury as to the actual cash value of the property damaged. Direct evidence of cost of replacement item by item would have enabled the jury to ascertain with more exactness such replacement cost, but the failure to present such evidence does not justify this Court setting aside the verdict of the jury. It was harmless error to permit appellee to testify as to replacement cost furnished him by Jet Reaves on the few items shown in the record.
As suggested by the appellant in its brief, the jury, in reaching a total verdict of $14,000 less $50 deductible as provided in the policy, probably permitted appellee's recovery of the policy limit of $10,000 for the house, and $4,000 for damages to the personal property located within the house which was insured for $5,000.
By the fifth assignment of error appellant urges that the verdict of the jury was based on conjecture, surmise, speculation and guesswork and was against the overwhelming weight of the evidence.
Appellant argues that the water rose in the house to a depth of 3 1/2 feet; that the porch was not blown away by the wind but washed off the house by the action of the rising water; that damage to the downstairs floors was caused by rising water; that the damages attributable to the wind would be less than the policy limits.
A neighbor, who lived about 300 feet from the insured premises, determined to ride out the storm with his son and a young neighbor boy. He testified that, before the water rose, he and the two young men left his property about 10:45 p.m. and at that time there was total devastation in the area. He testified that the porch blew off of his house and the wind had caused a great deal of damage to his house and the entire area before the water rose. The witness described their difficulty in reaching the hospital as follows:
At that point the wind was directly at our backs and with the three of us trying to help each other up Dunbar we had to crawl a great deal of the time on all fours because you couldn't stand up in the wind, it would blow you down, and by crawling and rolling and walking and whatever we could accomplish we made it up to the hospital... .
This testimony, together with the fact that there were holes in the roof of the house, supports a finding that damages to the house and personal property was caused by wind and rain before the rising water.
The amount of the damages to the house was shown by James F. Larroux, witness for the appellee, and William E. Knesel, witness for the appellant. A summary of their testimony is as follows:

 JAMES F. WILLIAM E.
 LARROUX KNESEL 
 Damage to roof $ 1,408.00 $ 1,440.00
 Walls 10'6" 6300 SF
 lower story 7,875.00 5,250.00
 Porch 1,800.00 816.12
 Downstairs ceilings 2,040.00 1,702.50
 Upstairs walls 562.50 300.00
 Downstairs floors 2,040.00 204.00
 Upstairs ceilings 960.00 288.00
 __________ ___________
 Total on main
 building $16,685.50 $10,000.62

The proof shows that the ceilings inside the house on the first floor were 12 feet high and the depth of the water in the house was 3 1/2 feet. By mathematical computation, based on the estimate of the appellant's witness, Knesel, of the cost to repair 6300 square feet of the downstairs walls, less damages to the porch and first floor, *496 the damage to the home above the high-water mark would approximate $9,050.62. By adding damage to outbuildings in the amount of $1,000, the total damage to the home and outbuildings would exceed the policy limits of $10,000.
Applying the same computation to the testimony of appellee's witness, Larroux, damages to the home above the high-water mark would approximate $15,304.25, exclusive of damage to the porch and first floor. Damage to the outbuildings in the amount of $1,000 would bring the total to $16,304.25.
There was ample evidence to sustain the jury's verdict without resort to conjecture, surmise, speculation or guesswork as contended by appellant that the home and outbuildings were in excess of the policy limits by wind and rain before the rising water.
We find no error in plaintiff's instructions No. 3[1] and 6[2] complained of.
For the reasons stated, this case is affirmed.
Affirmed.
RODGERS, P.J., and JONES, BRADY and SMITH, JJ., concur.
NOTES
[1] PLAINTIFF'S INSTRUCTION NUMBER 3

The Court instructs the jury for the plaintiff that if you believe from a preponderance of the evidence that the Plaintiff owned personal property and furniture which were located in the house at 1000 North Beach Boulevard, Bay St. Louis, Mississippi, at the time of the occurrence of Hurricane Camille, on August 17, 1969, and further believe from a preponderance of the evidence that the Plaintiff sustained a direct loss to such property by windstorm; and further that such loss was not caused by, resulted from, contributed to, or aggravated by flood, surface water, waves, tidal water, or tidal waves, overflow of bodies of water, or spray from any of the foregoing, whether driven by wind or not, then it shall be your sworn duty to find for the Plaintiff.
[2] PLAINTIFF'S INSTRUCTION NUMBER 6

The Court instructs the jury for the plaintiff, that if you find for plaintiff then in arriving at your verdict, you shall award the plaintiff such sums as a preponderance of the evidence, if any, represents a loss directly resulting from windstorm and not caused by, resulting from, or contributed to or aggravated by, flood, surface water, or spray from the foregoing, whether driven by wind or not.